**Xavier Gerard WINDOM a/k/a Zavier Gerard Windom, Appellant**

v.

**The STATE of Texas, Appellee.**

**No. 09–11–00605–CR.**

Court of Appeals of Texas, Beaumont.

Submitted July 12, 2012.

Decided Sept. 12, 2012.

Rehearing Overruled Sept. 20, 2012.

David W. Barlow, Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Ann Manes, Asst. Crim. Dist. Atty., for State of Texas.

Before McKEITHEN, C.J., GAULTNEY and KREGER, JJ.

## OPINION

DAVID GAULTNEY, Justice.

A jury found Xavier Gerard Windom guilty of possession of a controlled substance. The trial court sentenced him to ten years in prison, suspended the imposition of the sentence, and placed him on community supervision for ten years. In three issues, appellant argues the trial court abused its discretion in admitting evidence that he asserts was seized in violation of his rights. We conclude that Windom, as a visitor to an apartment under the facts proven here, may not challenge the one-step entry by an officer into the apartment to arrest someone thought to be a trespasser.

### THE ARRESTS

An apartment manager at an apartment complex in Port Arthur reported complaints regarding possible narcotics sales from an apartment. The manager also reported that Christopher Lavan, who had been trespass-warned to stay off the apartment complex premises, was in the apartment. Officer Primm and Officer Rowe responded to the complaint, and knocked on the door of the apartment.

Lavan opened the door. Recognizing Lavan as the person he had trespass-warned earlier, Officer Rowe told Lavan he was under arrest. Lavan turned around and placed his hands behind his back. Officer Rowe took one step into the apartment and the officers arrested Lavan for criminal trespass.

Once inside the apartment, Rowe saw what he believed to be marijuana and packaging supplies on the dining table, and what he believed to be cocaine on a fork on the kitchen counter. Primm placed handcuffs on Lavan. Rowe conducted a protective sweep of the apartment. Rowe saw Windom, who was visiting the tenant, standing next to the kitchen counter where the fork was located. The tenant was in the bedroom.

Rowe found crack cocaine in a pyrex dish on the kitchen floor. Primm retrieved a clear plastic baggie with white powder cocaine and two bags of marijuana from Windom's pockets. Windom was arrested for possession of a controlled substance.

### MOTION TO SUPPRESS

Windom filed a motion to suppress the evidence seized. He asserted that he was arrested and evidence was seized without a warrant, probable cause, or other lawful authority in violation of his state and federal constitutional rights, and in violation of his statutory rights under article 38.23 of the Texas Code of Criminal Procedure.

Before the jury was sworn, the trial judge noted that Windom had timely filed a motion to suppress. The trial judge stated he would rule on the evidence when it was objected to during the trial. Windom objected at trial. He argued that the evidence was obtained in violation of his constitutional rights to be free from unreasonable search and seizure, and that the entry into the apartment was illegal under

Article 14.05 of the Code of Criminal Procedure. The trial court overruled appellant's objections.

## STANDARD OF REVIEW

 In reviewing a trial court's ruling on a motion to suppress, an appellate court gives "'almost total deference to a trial court's determination of historical facts'" but reviews *de novo* the trial court's application of the law to those facts. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim.App.2000) (quoting *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App. 1997)). The trial court's ruling on the motion to suppress will be affirmed if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex.Crim.App.2009).

## FOURTH AMENDMENT

 The Fourth Amendment to the United States Constitution protects citizens against unreasonable searches and seizures. *See* U.S. Const. amend. IV; *Mincey v. Arizona*, 437 U.S. 385, 390, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Limon v. State*, 340 S.W.3d 753, 756 (Tex.Crim. App.2011). Article I, Section 9 of the Texas Constitution also recognizes the right of the people to be secure from all unreasonable searches and seizures. *See* Tex. Const. art. I, § 9. Windom does not argue that the Texas Constitution provides more protection than the Fourth Amendment, so we analyze the constitutional challenge under the Constitution of the United States. *See Flores v. State*, 319 S.W.3d 697, 702 n. 8 (Tex.Crim.App.2010).

 A defendant may challenge the admission of evidence obtained by a governmental intrusion if he had a legitimate expectation of privacy in the place invaded. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App.1996); *see also Kothe v.*

*State*, 152 S.W.3d 54, 60 (Tex.Crim.App. 2004). The defendant bears the burden of establishing that he had a legitimate expectation of privacy. *Villarreal*, 935 S.W.2d at 138 (citing *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) and *Calloway v. State*, 743 S.W.2d 645, 650 (Tex.Crim.App.1988)). To carry this burden, the defendant must prove that: (1) by his conduct, he exhibited an actual subjective expectation of privacy, i.e., a genuine intention to preserve something as private; and (2) circumstances existed under which society is prepared to recognize his subjective expectation as objectively reasonable. *Id.* at 138 (citing *Smith v. Maryland*, 442 U.S. 735, 740, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979)) (footnote omitted).

 Some of the factors considered in determining whether a defendant's alleged expectation of privacy is one that society accepts as reasonable are:

(1) whether the accused had a property or possessory interest in the place invaded; (2) whether he was legitimately in the place invaded; (3) whether he had complete dominion or control and the right to exclude others; (4) whether, prior to the intrusion, he took normal precautions customarily taken by those seeking privacy; (5) whether he put the place to some private use; and (6) whether his claim of privacy is consistent with historical notions of privacy.

*Voyles v. State*, 133 S.W.3d 303, 305–06 (Tex.App.-Fort Worth 2004, no pet.) (quoting *Granados v. State*, 85 S.W.3d 217, 223 (Tex.Crim.App.2002)); *Villarreal*, 935 S.W.2d at 138. None of the factors on this non-exclusive list is dispositive of a defendant's particular assertion of an expectation of privacy. *Voyles*, 133 S.W.3d at 306. A court examines the circumstances in their totality. *Id.*

■■■■ An overnight guest generally has a legitimate expectation of privacy in the residence in which he spent the night. *See Minnesota v. Olson,* 495 U.S. 91, 98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). In contrast, a visitor who did not stay the night, had no control over the apartment, and was there temporarily for a business transaction, may have had no legitimate privacy interest in the premises searched. *See Villarreal,* 935 S.W.2d at 139. Stated in a more general way, "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not." *Minnesota v. Carter,* 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998).

■■■■ An individual who is on the premises primarily to conduct a business transaction ordinarily is considered a commercial guest. *Id.* at 90–91, 119 S.Ct. 469. For Fourth Amendment purposes, property used for commercial purposes is treated differently from a residence. *Id.* at 90, 119 S.Ct. 469. In *Carter,* the United States Supreme Court noted that the visitors, who were involved in packaging of alleged drugs, "were essentially present for a business transaction and were only in the home a matter of hours." *Id.* at 86, 90, 119 S.Ct. 469. For them, the apartment was "simply a place to do business." *Id.* at 90, 119 S.Ct. 469. The expectation of privacy under those circumstances is considered "less than" that in a home. *See id.*

■■■■ Prior to the arrival of the police, the door was locked and the curtains were pulled. Windom did not have a property or possessory interest in the premises. He did not have the right to control who entered the apartment. He testified that he had permission from the tenant and Lavan to be there that day, and he intended to stay one or two nights. He did not bring any extra clothes with him, however.

He acknowledged that he did not know for sure whether he would spend the night. No evidence suggests that he kept any personal belongings at the apartment or had ever stayed there before. Windom did not give any purpose for visiting the apartment that day.

Examining all the circumstances, the trial court could reasonably reject Windom's testimony that he intended to be an overnight guest. *See Hollis v. State,* 219 S.W.3d 446, 458 (Tex.App.-Austin 2007, no pet.) (considering, among other factors, defendant's failure to keep personal belongings at another's property when deciding whether defendant shared owner's reasonable expectation of privacy); *Smith v. State,* 176 S.W.3d 907, 914 (Tex.App.-Dallas 2005, pet. ref'd) (same). The trial court could reasonably conclude that, for Windom, the apartment was simply a place to do business for the day. In our view, under the circumstances, any subjective expectation of privacy he may have had concerning the entry way of the apartment was not objectively reasonable.

### THE CODE OF CRIMINAL PROCEDURE

Article 14.05 of the Texas Code of Criminal Procedure provides that in cases in which arrests may be lawfully made without a warrant, the person making the arrest "is justified in adopting all the measures which he might adopt in cases of arrest under warrant, except that an officer making an arrest without a warrant may not enter a residence to make the arrest unless: (1) a person who resides in the residence consents to the entry; or (2) exigent circumstances require that the officer making the arrest enter the residence, without the consent of a resident or without a warrant." Tex. Code Crim. Proc. Ann. art. 14.05 (West 2005). Windom notes the officers did not obtain consent to enter the residence, and exigent

circumstances did not exist at the time of their warrantless entry.

■■ Article 14.05 places limitations on a warrantless arrest. The statute does not appear to impose a standing requirement. The statute does not provide, however, that evidence must always be excluded when the statute is violated. To determine whether exclusion of evidence is required, a court considers article 38.23. *See* Tex. Code Crim. Proc. Ann. art. 38.23 (West 2005) (exclusionary rule).

■■■ In a criminal trial, article 38.23(a) precludes the admission of evidence against the defendant where the evidence was obtained by an officer or other person in violation of the Texas Constitution, the United States Constitution, or other Texas law. *See id.* In some applications, the Texas exclusionary rule is broader than federal law. *See, e.g., Miles v. State,* 241 S.W.3d 28 (Tex.Crim.App. 2007). But while the rules are different and are not always applied the same, the original purpose for the statute appears to be the same as that of federal law. *See generally Craft v. State,* 107 Tex.Crim. 130, 295 S.W. 617, 618 (Tex.Crim.App. 1927). Article 38.23(a) deters unlawful actions that violate the rights of criminal suspects in the acquisition of evidence for prosecution. *Wilson v. State,* 311 S.W.3d 452, 459 (Tex.Crim.App.2010).

■■■ Article 38.23 has a standing requirement. *See Fuller v. State,* 829 S.W.2d 191, 202 (Tex.Crim.App.1992). The provision can be invoked for statutory violations related to the purpose of the exclusionary rule or the prevention of the illegal procurement of evidence of crime. *See Wilson,* 311 S.W.3d at 459. But generally the right to complain of an illegality is personal to the wronged party and is unavailable to anyone else. *Craft,* 295 S.W. at 618.

The Texas Court of Criminal Appeals explained in *Fuller v. State* the law of standing under article 38.23:

In Texas, the law of standing has been developed mainly in the courts of civil jurisdiction. There, it is a fundamental rule of law that only the person whose primary legal right has been breached may seek redress for an injury. Consequently, standing consists of some interest peculiar to the person individually and not as a member of the general public. For a person to maintain a court action, [therefore], he must show that he has a justiciable interest in the subject matter in litigation, either in his own right or in a representative capacity. One who has not suffered an invasion of a legal right does not have standing to bring suit.

Kindred rules have also appeared in the criminal context, usually as a result of search-and-seizure litigation. Thus, when the predecessor of article 38.23(a) was first enacted in 1925, contentions identical to those presented here were urged soon after. And, in a series of early opinions, this court rejected them all, holding that the right to complain because of an illegal search and seizure is a privilege personal to the wronged or injured party, and is not available to anyone else.

. . . .

As in the past, we do not interpret the sweeping language of article 38.23(a) to confer automatic third party standing upon all persons accused of crimes, such that they may complain about the receipt of evidence which was obtained by violation of the rights of others, no matter how remote in interest from themselves. Although article 38.23 might be read in such a way, we are simply unwilling, by statutory interpretation, to work such a fundamental change in this

State's elemental law of standing without a rather more explicit indication of legislative intent.

829 S.W.2d at 201–02 (internal quotes and citations omitted).

■ The officers did not arrest Windom at the point of entry, but rather intended to and did arrest Lavan for criminal trespass. Windom was not the person whose legal right was breached by the arrest alleged to be in violation of article 14.05. Windom does not have standing to challenge the arrest of Lavan.

■ When the officer arrested Lavan, the contraband was in plain view. Obtaining evidence that is in plain view is not a search. *See Walter v. State*, 28 S.W.3d 538, 541 (Tex.Crim.App.2000); *see also McCall v. State*, 540 S.W.2d 717, 720–21 (Tex.Crim.App.1976).

■ A one-step entry into an apartment may be considered a search and attacked as an illegality separate from the warrantless arrest. *See Limon*, 340 S.W.3d at 756 (Entry into a residence by a police officer is a search.); *McNairy v.*

*State*, 835 S.W.2d 101, 106 (Tex.Crim.App. 1991) (Threshold question presented was whether initial entry into appellant's home constituted a search.). Windom, however, had no property or possessory interest in the apartment. Windom was neither the tenant nor an overnight guest with an expectation of privacy in the residence, and he was not the person the officer entered the apartment to arrest. Under article 14.05, as implemented by article 38.23, he was not one "whose primary legal right has been breached[.]" *See Fuller*, 829 S.W.2d at 201 (quoting *Nobles v. Marcus*, 533 S.W.2d 923, 927 (Tex.1976)). We conclude he lacks standing under article 38.23.

Appellant's issues are overruled. The trial court's judgment is affirmed.

AFFIRMED.