

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

## PD-1320-10

---

**DENNIS WAYNE LIMON, JR., Appellant**

**v.**

**THE STATE OF TEXAS**

---

**On Discretionary Review
from the Thirteenth Court of Appeals,
San Patricio County**

---

Womack, J., delivered the opinion of the Court, in which Keller, P.J., and Price, Johnson, Keasler, Hervey, Cochran, and Alcala, JJ., joined. Meyers, J., filed a dissenting opinion.

The appellant, Dennis Wayne Limon, Jr., was convicted of the offense of deadly conduct and sentenced to three years' imprisonment. On appeal he challenged the trial court's denial of his pretrial motion to suppress evidence, and the Thirteenth Court of Appeals reversed.[1] We granted the State's petition to review to the following issues: (1) Is it reasonable for police to believe that a person who answers the door of a residence in the middle of the night has authority

---

[1] *Limon v. State*, 314 S.W.3d 694 (Tex. App.–Corpus Christi 2010).

to invite police to enter, or must police inquire as to that person's authority? (2) Does a teenager lack authority to invite officers inside a residence simply because he is a minor? (3) Does *Illinois v. Rodriguez*[2] require officers to make further inquiry when they are faced with ambiguity regarding the authority of a third party to consent to an entry or search?[3]

## I. Background

At the pretrial hearing on the appellant's motion to suppress evidence, Detective Gus Perez of the Aransas Pass Police Department testified to the circumstances surrounding the entry of the appellant's residence. Around 10:00 pm on June 28, 2007, Perez was called to investigate two incidents of "shots fired" in Aransas Pass. During his investigation, Perez received information that a green, four-door car was seen leaving the area of the first incident and that a resident living in the area of the second incident "believed that the Limon kids were involved." Perez, who knew of only one Limon family in Aransas Pass, proceeded to the Limon residence. When he arrived, Perez saw a "green Buick four door" parked on the street adjacent to the house. The hood of the car was still warm, and the passenger door appeared to have a bullet hole in it. Perez called for back-up and waited for three other officers to arrive before knocking on a front door[4] of the house at approximately 2:00 a.m.

The door was opened by a boy whom we shall call "A.S." Detective Perez testified that he did not know who A.S. was or how old he was. He later learned A.S.'s age to be 13 or 14.

Perez did not ask A.S. if he owned or possessed the residence, but "assumed that because

---

[2] 497 U.S. 177 (1990).

[3] A fourth issue ("Is error automatically harmful under Rule of Appellate Procedure 44.2(a) if the State does not argue that error is harmless?") is not necessary to our resolution of the case, and it is dismissed.

[4] The house apparently has two front doors.

he opened the door that he was one of the residents." Perez told A.S. that he was investigating a shooting case, and he asked for permission to enter the residence. A.S. admitted Perez and another officer.

When the officers entered the house, "there was an odor of marijuana coming from the residence itself." Perez and the other officer then proceeded to search the house, seizing certain evidence and arresting the appellant.

## II. Applicable Law

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures.[5] The entry into a residence by police officers is a "search" for purposes of the Fourth Amendment.[6] A warrantless police entry into a residence is presumed unreasonable unless the entry falls within one of a well-defined group of exceptions.[7] Voluntary consent is one such exception.[8]

Consent to entry "from one who possesses common authority over premises or effects is valid as against the absent, nonconsenting person with whom that authority is shared."[9] Common authority is derived from the third party's use of the property rather than his legal property interest:

> [t]he authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements, but rests rather on

---

[5] *See Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990).

[6] *See Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Cr. App. 2010).

[7] *Ibid.*

[8] *Ibid.*

[9] *United States v. Matlock*, 415 U.S. 164, 170 (1974).

mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.[10]

Even if actual authority does not exist, consent may be validly obtained from an individual with apparent authority over the premises.[11] Apparent authority is judged under an objective standard: "would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?"[12] As the Supreme Court discussed in *Georgia v. Randolph*,[13] reasonableness hinges on "widely shared social expectations" and "commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest."[14]

The State must prove actual or apparent authority by a preponderance of the evidence.[15] On appeal, determinations of actual and apparent authority are reviewed *de novo* as mixed questions of law and fact.[16] When the trial court does not enter findings of fact, as in this case,

---

[10] *Id.*, at 171 n.7 (citations omitted).

[11] *Rodriguez*, 497 U.S., at 188.

[12] *Id.* (internal quotations omitted).

[13] 547 U.S. 103 (2006).

[14] *Id.*, at 111.

[15] *See Hubert v. State*, 312 S.W.3d 554, 562 (Tex. Cr. App. 2010). Under Article I, Section 9 of the Texas Constitution, the *voluntariness* of consent must be proved by clear and convincing evidence. *Ibarra v. State*, 953 S.W.2d 242, 245 (Tex. Cr. App. 1997) ("We thus hold, as we consistently have, that the State must prove the voluntariness of a consent to search by clear and convincing evidence."). While the appellant alleges violations of both the Fourth Amendment and Article I, Section 9, he does not argue with the State's assertion that the proper burden of proof for *authority* to consent is the "preponderance of the evidence." Since the appellant has not argued that Article I, Section 9 offers broader protections, we analyze this case under the Fourth Amendment.

[16] *Id.*, at 559-60.

reviewing courts view the evidence in the light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling.[17]

### III. Analysis

In the present case, the State does not contend that A.S. had actual authority over the premises.  It argues in its first ground for review that it is reasonable for police to believe that a person who answers the door of a residence in the middle of the night has authority to invite police to enter. We do not find support for such a *per se* rule in Fourth Amendment cases. The test set out by the Supreme Court is whether the officer's belief in an individual's authority is reasonable under the facts known to the officer.[18]

Similarly, we need not consider a *per se* rule that children may, or may not, give consent to entry. Under given circumstances, and taking into account "widely shared social expectations" and "commonly held understanding," it may be reasonable or unreasonable to believe that a child has authority to consent to a particular intrusion. As the Supreme Court stated in *Randolph*, "'a child of eight might well be considered to have the power to consent to the police crossing the threshold into that part of the house where any caller, such as a pollster or salesman, might well be admitted,' but no one would reasonably expect such a child to be in a position to authorize anyone to rummage through his parents' bedroom."[19] Based on the Supreme Court's example in

---

[17] *Id.*, at 560.

[18] *Rodriguez*, 497 U.S., at 188.

[19] *Randolph*, 547 U.S., at 112 (quoting 4 W. LaFave, Search and Seizure §8.4(c), at 207 (4th ed. 2004)); *see also Allen v. State*, 44 So.3d 525 (Ala. Crim. App. 2010) (collecting cases and demonstrating the substantial majority of states allowing minors to give valid consent to search).

*Randolph*, the Fourth Amendment does not prohibit a minor child from consenting to entry when the record shows the officer's belief in the child's authority to consent is reasonable under the facts known to the officer.

Under the circumstances of the present case, we find five key facts supporting the reasonableness of Perez's belief.[20] First, A.S. opened the door by himself in response to Perez's knock. The trial court could have believed that his act suggests a greater level of authority to permit entry than, for example, if he had answered "What do you want?" from behind the door, or if he had answered the door with an adult in view behind him. Second, viewing the evidence in the light most favorable to its ruling, the trial court reasonably could have inferred from Perez's testimony that A.S. appeared to be at least a teenager of significant maturity, if not a young adult.

Third, A.S. consented to mere entry through the front door, as opposed to entry or search of less public areas of the house. The trial court could have believed that it was reasonable to rely on a teenager's authority to consent to such a limited scope of entry, while it would not have been reasonable to rely on his authority to consent to a more intrusive search.

Fourth, the officer's announced purpose was to conduct an emergency public-safety function. We think it an even more widely shared social expectation that a teenager would have authority to permit entry for an emergency public-safety function than, for example, entry for a salesperson to make a sales pitch.

---

[20] Numerous other facts are described by the Court of Appeals. These facts may be relevant to whether exigent circumstances arising before and after the entry permitted a warrantless search of the house, whether the appellant's father's post-entry consent to search was voluntary, whether the appellant's subsequent statement was voluntary, and whether any taint from an improper entry had attenuated before the appellant gave his statement. Those issues are not before us because the Court of Appeals resolved the appeal on the basis that A.S. did not have apparent authority to consent to entry. We therefore have stated only those facts relevant to apparent authority.

Finally we consider the time of the entry: 2:00 a.m. The Court of Appeals found that the hour weighed against believing that A.S. had authority because he may have been awakened from sleep and not thinking clearly. On the other hand, the trial court could have found it reasonable for Perez to believe that an individual opening the door at 2:00 a.m. was a resident rather than a guest. Furthermore, there is no evidence in the record that A.S. was in fact awakened from sleep or not thinking clearly. More importantly, lack of sleep and clarity of thought would be evidence relevant to the voluntariness of the consent rather than apparent authority to consent.

The Court of Appeals also stated, "These circumstances created an ambiguity that Officer Perez was obligated to resolve before entering the home, requiring him to ask further questions, such as whether the child actually lived at the home, whether the child's parents were available, whether the child understood that he did not have to consent, or whether the child wished to consult an adult on the premises." To support this statement, the Court cited *Illinois v. Rodriguez* for a "well-established rule that an officer may not proceed in an ambiguous situation without first verifying that the person purporting to consent to the entry has authority to do so."[21]

But we need not address the Court's formulation of such a rule because we find no ambiguity with respect to A.S.'s apparent authority. Under the facts available to Officer Perez at the moment, a mature teenager, possibly an adult, opened the front door to him at 2:00 a.m. and, after hearing that he was investigating a shooting, gave him consent to enter through the front door. We find that a  person of reasonable caution could reasonably believe that A.S. had the

---

[21] *Limon*, 314 S.W.3d, at 703 n.4 (citing *Rodriguez*, 497 U.S., at 186).

authority to consent to mere entry under those circumstances.[22]

We hold that the court of appeals erred in finding that A.S. did not have apparent authority to consent to entry. We therefore need not address the State's fourth point of error regarding harm. We reverse and remand to the court of appeals for proceedings not inconsistent with this opinion.

Delivered June 15, 2011.
Publish.

---

[22] Whether A.S. had apparent authority to consent to a search of the house, as distinguished from a mere entry, might be a closer question. However, that question is not presented for review. There is no evidence that Perez asked for or received consent from A.S. to search further. Rather, Perez's testimony indicates that the search of the house was conducted on his own initiative after smelling marijuana upon entering through the door. References by the Court of Appeals to A.S.'s consent to search the appellant's bedroom, *Limon*, 314 S.W.3d, at 702 and 703, were without any basis that we can find in the record.