NUMBER 13-08-00551-CR

 

                                        COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI
- EDINBURG

                                                                     


 

DENNIS WAYNE LIMON JR.,                                             Appellant,

 

v.

 

THE STATE OF TEXAS,                                    Appellee.

                                                                     


 

On appeal from the 36th
District Court

of San Patricio County,
Texas.

                                                                     


 

MEMORANDUM OPINION ON
REMAND

 

        Before
Chief Justice Valdez and Justices Benavides and Vela

       Memorandum
Opinion On Remand by Justice Benavides

 

This
case is before us on remand from the Texas Court of Criminal Appeals.  See
Limon v. State, No. PD-1320-10, 2011 Tex. Crim. App. LEXIS 830 (Tex. Crim.
App. June 15, 2011).  Appellant, Dennis Wayne Limon, Jr., was convicted of
deadly conduct with a firearm, a third-degree felony, and sentenced to three
years’ imprisonment in the Texas Department of Criminal Justice—Institutional
Division.  See Tex. Penal Code
Ann. § 22.05 (West 2003); id. § 12.34 (West Supp. 2010).  By a
single issue, Limon argues that the trial court erred by denying his motion to
suppress illegally-obtained evidence.  We affirm.

I.  Background[1]

            Limon
was indicted for the offense of deadly conduct with a firearm and subsequently
filed a “Motion to Determine the Admissibility of Illegally Obtained Evidence
and Statements.”  At the hearing on the motion, Officer Gus Perez testified
that on June 28, 2007, he received a call at about 10:00 p.m. informing him
that there was a shooting in Aransas Pass at the 1400 block of W. Matlock.  On
his way to that location, Officer Perez was advised that another shooting had
occurred. He proceeded to the location of the second shooting, at 244 N. 11th
Street.  At the scene of the second shooting, Officer Perez recovered three
"shotgun waddings," which he described as projectiles from a
shotgun.  He spoke to a witness who advised Perez that he had seen a green four-door
car leaving the area.  Officer Perez then proceeded to the location of the
first shooting.  When he arrived, he was approached by a “person that live[d]
in the vicinity who advised [him] that that person believed that the Limon kids
were involved.”  Officer Perez testified that he knew of only one Limon family
in Aransas Pass, and he knew where they lived.  He went to the Limon residence,
arriving at approximately 2:00 a.m., where he observed a green Buick four-door
car.  He felt the hood, which he stated was warm and observed what appeared to
be a bullet hole in the front passenger door.  Officer Perez testified on
cross-examination that the bullet hole indicated to him that someone had shot
at the car.  Officer Perez then called for backup, and three other officers
arrived within minutes.

Officer
Perez testified that he did not have a search warrant or an arrest warrant, and
it would have taken him about an hour and a half to two hours to get one.  Officer
Perez went to the front door and knocked. The door was answered by A.S. Officer
Perez testified that he knew that Limon's father (hereinafter “Limon, Sr.”), an
adult, lived in the residence.  On direct examination during the pretrial
hearing, Officer Perez testified that A.S. was a teenager, about thirteen or
fourteen years old.  Officer Perez asked A.S. if he could search the residence,
to which A.S. agreed.

Officer
Perez testified that while he was outside the home, he did not see any crimes
visibly being committed inside or outside the home.  He stated that when he
arrived at the front door, he had a “reasonable suspicion that there was a
suspect inside . . . .  It was likely—I didn't know.  It
was approaching probable cause but more than a reasonable suspicion.”

Officer
Perez testified that, once in the home, “there was an odor of mari[h]uana
coming from the residence itself.”  He stated that he and Officer Hernandez
went to the bedroom in the southwest corner of the residence, where they
observed Limon and two other males lying in bed, apparently sleeping with the
lights on.  The officers had their guns drawn, and they told Limon and the two
males to get up.  Limon was handcuffed and moved into the common area of the
home.  




Officer
Perez stated that another officer, Officer Rhodes, was outside the residence
looking through a window into the southwest bedroom, and he informed Officer
Perez that he saw weapons in the room.  Officer Perez stated that “[t]here was
[sic] two handguns towards the front where their heads were to the west side of
the bed at which point we went ahead and detained everybody in the residence,
secured them all so we could secure those weapons and see if there was [sic]
any other weapons.”

After
the initial “sweep” of the home, Mrs. Limon then gave written consent to search
the home.  After obtaining consent, Officer Perez photographed the residence,
and he testified that ammunition for a .22 caliber gun and a 12-gauge shotgun
were found in the southwest bedroom, along with drug paraphernalia.  He stated
that outside the residence, in the vicinity of the southwest bedroom, the
officers located a “Remington semiautomatic shotgun 12 gauge.”  Officer Perez
agreed that the shotgun was “near the window of the southwest bedroom” in an
area enclosed by a privacy fence belonging to the Limon residence.

Officer
Perez testified that at that time, he "felt that there was probable cause
for the arrest," and he arrested Limon. Limon was transported to the
police station and booked, which took approximately one hour.  Limon was in the
jail for about thirty minutes before he was given his Miranda warnings;
following the warnings, at 5:01 a.m., he provided a statement.

The
trial court denied Limon's motion to suppress without stating the grounds or
issuing findings of fact and conclusions of law.  The evidence obtained from
the search of the residence, the later search of the car, and Limon’s statement
were admitted at trial, and Limon was convicted of deadly conduct by use of a
firearm.  See id. § 22.05(b)(2), (e).  

II. 
Procedural History

            On
the original submission in this case, a majority of this Court held that A.S.,
a minor, did not have apparent authority to admit the officers into the Limons’
home, and we concluded that all of the evidence gathered in the home, in
Limon’s car, and Limon’s subsequent statement derived from the officers’
illegal entry, were “fruits of the poisonous tree,” and should have been
excluded from evidence at Limon’s trial.  See Limon, 314 S.W.3d 694,
704–09 (Tex. App.—Corpus Christi 2010).  The court of criminal appeals granted
the State’s subsequent petition for discretionary review and reversed this
Court’s holding, noting:

Under the facts available to Officer
Perez at the moment, a mature teenager, possibly an adult, opened the front
door to him at 2:00 a.m. and, after hearing that he was investigating a
shooting, gave him consent to enter through the front door.  We find that a
person of reasonable caution could reasonably believe that A.S. had the
authority to consent to mere entry under those circumstances.

 

Limon, 2011 Tex. Crim. App. LEXIS 830, at
*11.  The court of criminal appeals remanded the case to this Court “for
proceedings not inconsistent with [its] opinion.”  Id. at *12.

III. 
Discussion

            Because
the court of criminal appeals determined that A.S. had apparent authority to
consent to the police officers’ entry into the home, our task on remand is to
evaluate Limon’s remaining contentions, beginning with the premise that the
officers’ were inside the home legally.  In this evaluation, we rely on the
court of criminal appeals’s holding that 

 

A.S. consented to mere entry through
the front door, as opposed to entry or search of less public areas of the
house.  The trial court could have believed that it was reasonable to rely on a
teenager’s authority to consent to such a limited scope of entry, while it
would not have been reasonable to rely on his authority to consent to a more
intrusive search.

 

Id. at *9.  Therefore, the relevant
argument remaining for review is whether, upon entry, the officers legally
searched beyond the common area of the house.

A. 
Standard of Review

“[W]hen
reviewing a trial court's decision to deny a motion to suppress, an appellate
court ‘should afford almost total deference to a trial court's determination of
the historical facts that the record supports especially when the trial court’s
fact findings are based on an evaluation of credibility and demeanor.’”  Montanez
v. State, 195 S.W.3d 101, 105 (Tex. Crim. App. 2006) (quoting Guzman v.
State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).  We afford the same
deference to rulings applying law to fact questions, otherwise known as mixed
questions of law and fact, “‘if the resolution of those ultimate questions
turns on an evaluation of credibility and demeanor.’”  Id. (quoting Guzman,
955 S.W.2d at 89).  “Finally, an appellate court may conduct a de novo review
where the resolution of mixed questions of law and fact does not turn on an
evaluation of credibility and demeanor.”  Id.  

Where
a trial court does not enter any findings of fact, we must view the evidence
“‘in the light most favorable to the trial court's ruling’” and “‘assume that
the trial court made implicit findings of fact that support its ruling as long
as those findings are supported by the record.’”  Id. (quoting State
v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)).  

 

B. 
Analysis

            The
officers in this case did not have a warrant to search the rooms of the Limons’
house, nor did they have consent.  Id.  However, these facts do not
automatically make the search illegal.

“In
order for a warrantless search to be justified, the State must show the
existence of probable cause at the time the search was made, and the existence
of exigent circumstances which made the procuring of a warrant impracticable.” 
McNairy v. State, 835 S.W.2d 101, 106 (Tex. Crim. App. 1991) (citing Hooper
v. State, 516 S.W.2d 941, 944 (Tex. Crim. App. 1974)).  “Probable cause to
search exists when reasonably trustworthy facts and circumstances within the
knowledge of the officer on the scene would lead a man of reasonable prudence
to believe that the instrumentality of a crime or evidence of a crime will be
found.”  Id. (citing Washington v. State, 660 S.W.2d 533, 535
(Tex. Crim. App. 1983)).  “Probable cause is the sum total of layers of
information and the synthesis of what the police have heard, what they know,
and what they observe as trained officers.  We weigh not individual layers but
the ‘laminated’ total.”  Smith v. United States, 358 F.2d 833, 837 (D.C.
Circ. 1965).  The U.S. Supreme Court has expressed the probable cause standard
as follows:

In dealing with probable
cause, . . . as the very name implies, we are dealing with
probabilities.  These are not technical; they are the factual and practical
considerations of everyday life on which reasonable and prudent men, not legal
technicians, act.

 

Brinegar v.
United States, 338
U.S. 160, 176 (1948); see also McNairy, 835 S.W.2d at 106; Woodward
v. State, 668 S.W.2d 337, 340 (Tex. Crim. App. 1982) (op. on reh’g).




            Here,
once inside the home, Officer Perez smelled marihuana.  His testimony was
additionally supported by the fact that the officers did in fact find small
amounts of marihuana and paraphernalia used to smoke marihuana in the house. 
It is well established that an officer may gain probable cause to search an
area when a recognizable odor of an illegal substance is clearly emanating from
that area.  See McNairy, 835 S.W.2d at 106 (noting that the
unmistakable odor of methamphetamine production was a valid element in
establishing probable cause); Longoria v. State, 747 S.W.2d 50, 52 (Tex.
App.—San Antonio 1988, pet. ref’d) (citing Brown v. State, 481 S.W.2d
106, 111–12 (Tex. Crim. App. 1972)) (noting that after consent was given to
search the back of a vehicle, when the “appellant opened the back of the
vehicle, the [officers] smelled the odor of marihuana,” and that “[p]robable
cause arose at that time for the officer to believe a crime had been or was
being committed”).  Here, the smell of marihuana emanating from Limon’s home
would “lead a man of reasonable prudence to believe that the instrumentality of
a crime or evidence of a crime will be found.”  See McNairy, 835 S.W.2d
at 106.  Therefore, it would be reasonable for the trial court to find that,
once admitted into the common area of Limon’s house, the officers acquired
probable cause to search the house based on the observance of the odor of
marihuana.  See id.; Longoria, 747 S.W.2d at 52. 

Once
we determine that probable cause existed for the search, “the inquiry becomes
whether exigent circumstances existed to obviate the need for a search
warrant.”   McNairy, 835 S.W.2d at 107 (citing Hooper, 516 S.W.2d
at 944).  

A variety of such circumstances may
place a police officer in situations in which a warrantless entry is viewed as
a reasonable reaction by the officer.  Situations creating exigent
circumstances usually include factors pointing to some danger to the officer or
victims, an increased likelihood of apprehending a suspect, or the possible
destruction of evidence.

 

Id. (citing Stewart v. State, 681
S.W.2d 774, 777 (Tex. App.—Houston [14th Dist.] 1984, pet. ref’d) (noting that
exigent circumstances justifying a warrantless entry include “(1) rendering aid
or assistance to persons whom the officers reasonably believe are in need of
assistance; (2) preventing the destruction of evidence or contraband; and (3)
protecting the officers from persons whom they reasonably believe to be present
and armed and dangerous”)).

            Here,
it was reasonable for the officers to believe that an immediate search was
necessary to prevent the destruction of evidence and to increase the likelihood
of apprehending a subject because, if they had left in order to obtain a
warrant, the individuals in the house would certainly have been warned that the
police had been to the door and would be coming back with a warrant.  
Additionally, because the officers arrived at the house based on a tip that
individuals involved in an earlier shooting lived in the house, and because
that tip was corroborated by a vehicle with a bullet hole in its door matching
the description of one involved in the shooting, the officers were justified in
searching the premises immediately in order to ensure their own safety.  In
other words, “this evidence supported an implied finding of specific and articulable
facts of a danger to the officers, sufficient to enable Officers Perez and
Hernandez to move forward inside the Limon residence to a bedroom under the
auspices of a protective sweep.”  See Limon, 314 S.W.3d 694, 712 (Tex.
App.—Corpus Christi 2010) (Vela, J. dissenting).  Therefore, we conclude that
exigent circumstances existed justifying the officers’ failure to secure a
search warrant.  See McNairy, 835 S.W.2d at 107.  Accordingly, the
search conducted was legal.  Limon’s issue is overruled.




IV. 
Conclusion

            Having
overruled Limon’s only issue, we affirm the trial court’s judgment.  

 

 

 

________________________

GINA
M. BENAVIDES,

Justice

 

Do not publish.

Tex. R. App.
P. 47.2(b).

 

Delivered and filed the

25th day of August, 2011. 

 









[1]  Because the parties are familiar
with the facts, we will not recite them in their entirety except as necessary
to advise the parties of the Court's decision and the basic reasons for it.  See
Tex. R. App. P. 47.1.  For a full
recitation of the facts surrounding this case, see our opinion in the original
submission, Limon v. State, 314 S.W.3d 694 (Tex. App.—Corpus Christi
2010), rev’d, No. PD-1320-10, 2011 Tex. Crim. App. LEXIS 830 (Tex. Crim.
App. June 15, 2011).