**AFFIRM; and Opinion Filed July 8, 2013.**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-12-00580-CR**

**No. 05-12-00581-CR**

**CECIL CAIN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F10-53683-Q and F10-53684-Q**

## MEMORANDUM OPINION

Before Justices O'Neill, Francis, and Fillmore
Opinion by Justice O'Neill

Appellant Cecil Cain was indicted for the offenses of possession with intent to deliver cocaine and possession with intent to deliver dihydrocodeinone. He entered an open plea of guilty, and the trial court placed him on deferred adjudication for eight years in each case. On appeal, he argues the trial court erred in denying his motion to suppress. We affirm the trial court's judgment.

## Background

Officers Jeremiah Byous and D.J. Kelly testified to the following facts at the suppression hearing. On the afternoon of March 26, 2010, Dallas police officers from the Crime Response Team responded to a possible narcotics complaint at a home. Officer Byous was familiar with appellant, who resided at the home, because in 2009, Officer Byous arrested someone in

possession of crack cocaine leaving the home. The person told Officer Byous he purchased the drugs from appellant.

Upon arriving at the home, Officer Byous testified two men were outside. One man was working on a car, and the other man, named McAfee, said he lived at the house. When Officer Byous asked if they could enter the home, McAfee "gave us consent." Officer Byous could not remember if he or McAfee opened the door, but "[McAfee] was perfectly okay with it."

McAfee told Officer Byous other people were in the house. Based on his observations, Officer Byous said several elderly women were present. It appeared they were taking care of McAfee's sick, elderly aunt.

Officer Kelly also entered the house. When he walked down a hallway, he looked directly into the room in front of him. In plain view, he saw a razor and white residue lying on top of a dresser. Based on his training and experience in narcotics, he believed crack cocaine was being cut in the bedroom. He explained crack cocaine is a hard crystal-like rock substance, and a residue is typically left over after cutting it. He explained the residue was readily apparent from the doorway.

After Officer Kelly saw the razor and residue, appellant walked out of the bedroom. Officer Kelly told appellant he was investigating a narcotics complaint and asked if he could enter the bedroom. Appellant said, "You're not coming in my room" and shut the door. Appellant then went outside with officers.

Officer Byous learned of the possible presence of drugs in appellant's room. When he asked appellant about it, appellant said, "There's crack in there . . . . About five or six rocks." Officer Byous then detained appellant outside the home. When asked why officers did not obtain a search warrant before entering appellant's room, Officer Byous testified they did not want to make the elderly women leave the home and wait several hours outside while they

waited to execute it. He also voiced his concern that evidence could be destroyed, hidden, or concealed if they waited to obtain a search warrant.

Officer Kelly testified that after appellant admitted to having crack cocaine in his bedroom, Officer Kelly opened the bedroom door and went inside. He opened the top to an aerosol can and found a bag with rocks of crack cocaine. He then opened the top drawer of the dresser and found pill bottles. He estimated the bottles contained approximately 250 pills. A digital scale was also recovered. During a secondary search of the house, a pistol was found under the mattress.

At the end of the suppression hearing, the trial court took the matter under advisement and said it was focusing on "whether or not the consent of Mr. McAfee . . . was broad enough to allow the police to go into Mr. Cain's room" and "whether or not the defendant, when he closed his door, basically denied them any kind of consent on his part to enter the room and then whether or not that they then had a basis for going–breaching the door . . . to pursue what the officer saw in plain view." When the court reconvened, it denied the motion to suppress. No findings of fact or conclusions of law were requested or entered. This appeal followed.

## Standard of Review

A trial court's ruling on a motion to suppress is reviewed for an abuse of discretion under a bifurcated standard. *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). As the reviewing court, we defer to the trial court's determination of facts but review its application of the law de novo. *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000). When, as here, the trial court does not make findings of fact, appellate courts view the evidence in the light most favorable to the trial court's ruling and assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record. *Id*.

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990); *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011). The entry into a residence by police is a "search" for purposes of the Fourth Amendment. *Limon*, 340 S.W.3d at 756. A warrantless police entry into a residence is presumed unreasonable unless the entry falls within one of a well-defined group of exceptions. *Id*. Voluntary consent and a search incident to an arrest are two exceptions. *Id*.; *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App. 2003).

## Discussion

Appellant first argues McAfee did not have apparent authority to allow officers into the house. He further contends that even assuming McAfee had apparent authority, McAfee's apparent authority ended when appellant shut the bedroom door and told Officer Kelly he could not enter. We begin our analysis by determining whether the record, when viewed in the light most favorable to the trial court's ruling, supports the implied finding that McAfee had apparent authority to consent to a search of the home.

The State bears the burden of proving that the person who gave consent had the actual or apparent authority to do so. *Rodriguez*, 797 U.S. at 181. The doctrine of "apparent authority" provides that a person, though lacking actual authority, may nevertheless give police valid consent to search a premises under conditions where the facts available to the police would warrant a man of reasonable caution in the belief that the consenting party had authority over the premises. *Id*. at 188. The State cannot satisfy this burden if officers proceed without making further inquiry into an ambiguous situation. *Corea v. State*, 52 S.W.3d 311, 317 (Tex. App.—Houston [1st Dist.] 2001, pet. ref'd). However, if officers reasonably believed the third party had common authority over the place to be searched, then their good faith mistake will not

invalidate the search. *Id*. The State must prove actual or apparent authority by a preponderance of the evidence. *Limon*, 340 S.W.3d at 757.

The record shows officers went to the home because of a possible narcotics complaint. When officers arrived, McAfee was outside the home.

An audio recording of the encounter with McAfee was admitted into evidence and played for the court. On the recording, when Officer Byous asks McAfee if he lives at the home, McAfee says yes. When asked how long he has lived there, he responds "My mother has addressed here for the last thirty to forty years." McAfee then tells officers his aunts and brothers are also inside. When Officer Byous asked, "Do you mind if we take a look around?" McAfee says, "Yeah." McAfee then says, "Oh, you wanna come in?" Officer Byous responds, "Yes," and McAfee then says, "Oh." The recording stops at this point because according to Officer Byous, once an officer receives consent, it is normal protocol to turn off the recorder. Officer Byous testified McAfee "gave us consent." While Officer Byous could not remember if he or McAfee opened the door, he testified "[McAfee] was perfectly okay with it."

Based on this exchange, appellant contends that although McAfee said he lived there, he "clearly indicated that the home belonged to his mother," therefore, she was the appropriate person from whom to obtain consent. We disagree. The doctrine of apparent authority requires that officers reasonably believed the third party had common authority over the place to be searched based on the facts available to them at the time. Both the audio recording and Officer Byous's testimony indicate McAfee said he lived at the home. Based on the record, the trial court could have properly concluded Officer Byous was reasonable in his belief that McAfee had common authority and could consent to entry of the home. In reaching this conclusion, we are not persuaded by appellant's arguments that the situation was ambiguous because McAfee did

not say how long he had lived at the house or because McAfee indicated his mother had lived there for years.

Because McAfee had authority to allow officers inside to search the home, we must now decide whether his consent ended when appellant shut the bedroom door and told Officer Kelly he could not go inside. Appellant relies on *Georgia v. Randolph*, 547 U.S. 103 (2006) to support his position.

In *Randolph*, the United States Supreme Court held "that a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant." *Id*. at 122–23. In that case, Randolph's wife called the police over a domestic dispute. *Id*. at 107. When the police arrived, the wife told them Randolph used drugs, and he had drugs inside the house. *Id*. Police asked Randolph for consent to search the house, and he expressly refused. *Id*. Police then asked his wife for consent to search, which she granted. *Id*. The Court held that Randolph's refusal to consent trumped his wife's subsequent consent. *Id*. at 120.

A key fact distinguishes the present case from *Randolph*: the application of the plain view doctrine. Officers may seize evidence without a warrant when (1) the officer sees an item in plain view at a vantage point where he has the right to be; (2) it is immediately apparent that the item seized constitutes evidence, i.e., there is probable cause to associate the item with criminal activity; and (3) the law enforcement officer has a lawful right of access. *See Teeter v. State*, 05-06-00309-CR, 2007 WL 510356, at \*10 (Tex. App.—Dallas Feb. 20, 2007, no pet.) (not designated for publication). The rationale of the plain view doctrine is that if contraband is left in open view and is observed by a police officer from a lawful vantage point, there has been no invasion of a legitimate expectation to privacy and thus no "search" within the meaning of the

Fourth Amendment, or at least no search independent of the initial intrusion that gave the officers their vantage point. *Id.*; *see also Illinois v. Andreas*, 463 U.S. 765, 771 (1983).

Here, Officer Kelly was inside the home under the authorized consent of McAfee. Officer Kelly's observation of drug residue and a razor on a dresser inside appellant's room was not an illegal search, but rather his observation of evidence of criminal activity that was in plain view from the hallway. *See, e.g., Berry v. State*, 05-05-01104-CR, 2006 WL 1976942, at *3 (Tex. App.—Dallas July 17, 2006, pet. ref'd) (mem. op., not designated for publication) (noting drugs that were lying on a bedroom floor and observed by an officer from the hallway were in plain view). Officer Kelly saw the drugs before appellant shut the door and told him he could not go inside. This distinction makes appellant's reliance on *Randolph* inapplicable. In that case, the appellant told officers they could not go inside and search his home before officers entered based on the consent of his wife. The officers did not discover the incriminating evidence until after they were inside the home. Here, Officer Kelly saw the drugs in plain view before appellant tried to deny entry. Accordingly, he had a right to enter appellant's bedroom and seize the evidence in plain view without a warrant.

Our analysis, however, does not end here. We must now consider whether Officer Kelly's later search of appellant's room, which recovered other incriminating evidence not in plain view, was legal under an exception to a warrantless search.

While not raised by either party, a search incident to an arrest is an exception to a warrantless search. *McGee*, 105 S.W.3d at 615; *see Miller v. State*, 393 S.W.3d 255, 263 (Tex. Crim. App. 2012) ("If a trial court's ruling is supported by the record, we will affirm that ruling if there is any valid theory of law that supports the ruling, even if that theory was not presented to the trial court."). The fact that a search incident to an arrest precedes the formal custodial arrest by a short time is of no consequence. *Williams v. State*, 726 S.W.2d 99, 101 (Tex. Crim.

App. 1986); *State v. George*, 12-12-00052-CR, 2013 WL 2286083, at \*3 (Tex. App.—Tyler May 22, 2013, no pet.) (mem. op., not designated for publication).  The time at which an officer announces the arrest is not the critical issue; rather it is whether sufficient probable cause to arrest existed before the search.  *George*, 2013 WL 2286083, at \*3.

Here, the record shows after closing his bedroom door and being escorted outside by officers, appellant admitted to Officer Byous he had five or six rocks of crack cocaine in his bedroom.  This information, in addition to Officer Kelly's plain view observations, provided probable cause to arrest appellant for possession of narcotics.

Although the record indicates Officer Kelly entered appellant's bedroom and searched before appellant was arrested, Officer Byous testified appellant was arrested "several minutes later" after officers confirmed contraband in the room.  Thus, the arrest "fell quickly on the heels of the search."  *Id*. at \*5.  Thus, the evidence from the suppression hearing showed that at the time of the search, officers had probable cause to arrest appellant.  The evidence further shows the arrest "fell quickly on the heels" of the search.  Therefore, Officer Kelly conducted a proper search incident to an arrest.  In reaching this conclusion, we need not address the State's argument as to whether exigent circumstances existed for entry into the bedroom.

Accordingly, we conclude the trial court did not abuse its discretion by denying appellant's motion to suppress.  We overrule his sole issue and affirm the trial court's judgment.

/Michael J. O'Neill/
MICHAEL J. O'NEILL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47

120580F.U05

–8–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CECIL CAIN, Appellant

No. 05-12-00580-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District Court, Dallas County, Texas
Trial Court Cause No. F10-53683-Q.
Opinion delivered by Justice O'Neill,
Justices Francis and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 8th day of July, 2013.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

CECIL CAIN, Appellant

No. 05-12-00581-CR          V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F10-53684-Q.
Opinion delivered by Justice O'Neill,
Justices Francis and Fillmore participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 8th day of July, 2013.

/Michael J. O'Neill/

MICHAEL J. O'NEILL
JUSTICE