**Affirmed and Memorandum Opinion filed August 1, 2017.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-16-00674-CR**
**NO. 14-16-00675-CR**

---

**LEROY BARTIE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 185th District Court**
**Harris County, Texas**
**Trial Court Cause Nos. 1490504 and 1490506**

---

## M E M O R A N D U M   O P I N I O N

Appellant, Leroy Bartie, was charged with possession of cocaine with intent to deliver (trial court cause 1490504), enhanced by two prior convictions, and possession of phencyclidine (PCP) with intent to deliver (trial court cause 1490506), also enhanced by two prior convictions. Before trial, appellant moved to suppress evidence seized during a warrantless search of his residence. After his pretrial motion to suppress was denied, appellant pleaded guilty to both charged offenses

pursuant to an agreed recommendation. The trial court found appellant guilty of the charged offenses and the allegations in the enhancement paragraphs true. In accordance with the terms of the plea bargains, the trial court assessed punishment at 25 years' confinement, to run concurrently. In one issue on appeal of both cause numbers, appellant contends the trial court erred in denying his motion to suppress evidence. We affirm.

## I.    Standard of Review

When reviewing a trial court's ruling on a motion to suppress, an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011); *Zuniga-Hernandez v. State*, 473 S.W.3d 845, 848 (Tex. App.—Houston [14th Dist.] 2015, no pet.). We use a bifurcated standard of review. *State v. Rodriguez*, ___S.W.3d ___, No. PD-1391-15, 2017 WL 2457441, at *13 (Tex. Crim. App. June 7, 2017); *Jackson v. State*, 468 S.W.3d 189, 194 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Trial courts are given almost complete deference in determining historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations. *Martinez*, 348 S.W.3d at 922–23; *see Rodriguez*,___S.W.3d___, 2017 WL 2457441, at *13; *Zuniga-Hernandez*, 473 S.W.3d at 848.

In a hearing on a motion to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). When the trial court files findings of fact with its ruling on a motion to suppress, as here, an appellate court does not engage in its own factual review, but determines only whether the record supports the trial court's fact findings. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.

Crim. App. 1990); *see Flores v. State*, 177 S.W.3d 8, 13–14 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Under this deferential standard of review, an appellate court should only disturb a trial court's findings of fact if they are clearly erroneous. *See Manzi v. State*, 88 S.W.3d 240, 254 (Tex. Crim. App. 2002). To determine whether a fact finder's decision is clearly erroneous, appellate courts examine the record to see whether the ruling leaves them with the definite and firm conviction that a mistake has been committed. *Guzman v. State*, 85 S.W.3d 242, 254 (Tex. Crim. App. 2002) (internal citations omitted).

## II.     The Evidence

On December 3, 2015, Houston Police Department officers Christian Dorton and Tobias Hollohazy were watching a residence, 3019 Bain, as part of a proactive narcotics investigation in northeast Houston, Harris County. The officers had received information of a narcotics trafficking operation in the house. The officers observed a car pull up to the house. A male exited the vehicle; he went inside the residence with cash in his hand. Appellant[1] was observed opening the door; the man exited the house and did not appear to have anything. The man then got back inside the vehicle. Based on the narcotics information and the vehicle driving on the wrong side of the road leaving the location, the officers stopped the vehicle near appellant's residence on a traffic violation.

The male occupant of the car, Henry Wilson, admitted to the officers that he went in the house and bought PCP from appellant. At this point, appellant walked out of the residence toward the officers, yelling at them. Officer Dorton detained appellant based on Wilson's statement that he had bought drugs from appellant and finding those drugs in the vehicle.

---

[1] As reflected in the record, appellant also is known as "T-man."

3

After appellant was detained, a woman, who identified herself to officers Dorton and Hollohazy as Shanika Butler, exited the house using the same door as appellant and approached the officers. Officer Hollohazy testified that Butler told him that she was appellant's common-law wife and that she had lived in the house for the past six months. Officer Dorton informed Butler that appellant was being detained in the backseat of the patrol unit for having drugs in the house. Officer Dorton testified that while being detained appellant asked several times to speak with his wife.

Butler volunteered to officer Dorton that appellant had more drugs in the house. Butler specifically told officer Dorton the type of drugs and their location inside the house. She told officer Dorton that she had lived in the house with appellant for seven or eight months. Butler voluntarily singed a written consent form permitting officers to search the residence. Officers Dorton and Hollohazy testified that at that point they believed Butler resided at the residence.

Officers Dorton and Hollohazy participated in the search of the house and discovered the drugs consistent with Butler's descriptions, a stolen gun, and a large amount of cash. Officers Dorton and Hollohazy also found mail addressed to 3019 Brian belonging to both Butler and appellant as well as women's clothing in the house.

Also testifying at the suppression hearing were appellant's siblings, Latrisha Bartie and Brandon Griffin. Latrisha, appellant's sister, testified that she owned the home at 3019 Bain and permitted appellant to live there. Latrisha testified that she did not permit Butler to live in the house and denied that appellant and Butler were married. Griffin, appellant's brother, testified that he lived near appellant at 3019 Bain. Griffin denied appellant was married to Butler or even common law married to her. He acknowledged, however, seeing Butler at appellant's house. Griffin

4

testified that he was unsure if Butler lived there and admitted that he witnessed things that "might indicate she was living there." He conceded that he had seen Butler's clothes and personal items at the house.

### III.    Trial Court Findings

On August 22, 2016, after reviewing the evidence and arguments of counsel, the trial court denied the motion to suppress and made the following findings on the record:[2]

> The Court finds that the testimony of Officer Dorton was credible in that this was a search without a warrant, that at the time Officer Dorton had information from the patrol — from the unit that stopped the vehicle with Mr. Wilson in it, that PCP was found in the vehicle and that Mr. Wilson at that time stated that he got it from the defendant and as a result of that, they then made contact with the defendant who at the time was not in the residence but who approached the officers and they approached him at the same time a couple of doors down.
>
> The Court finds at the time Ms. Butler came out of the home that the officers were credible in their testimony, that she came out of the home, that they approached her and discussed with her and that she at that time stated that she — there was more drugs in the house, that she was the defendant's wife, had lived there for seven or eight months and at the time, based on everything that the Court has observed, there does not appear to be anything that made the consent by Ms. Butler to be involuntary. She even wrote a statement on there, which in all the years, this Court has never seen a witness write a statement on the back of a consent to search.

---

[2] A trial judge's findings on a motion to suppress may be written or oral. *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006); *Hauer v. State*, 466 S.W.3d 886, 890–91 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Oral findings of fact can be considered as findings of fact on the record and given due deference. *Hauer*, 466 S.W.3d at 890–91 (internal citations omitted).

So, the Court finds that at the time the officer believed, based on what — based on observing Ms. Butler come out of the residence, that she indicated there was more dope in the house, that she was his wife and lived there for several months, that they had reason to believe at that time that she had permission — that she had the right to give permission and that further was substantiated once the officers went in and found mail and women's clothing, that, in fact, their belief that when she said, I live there, I'm his wife, that she, in fact, did live there and was his wife.

I do not find Ms. Bartie to be credible in her statements. They were completely contradicted by Ms. Griffin. God love him; he was honest as could be about that and in a very uncomfortable position. It was obvious from the way he testified and also what he said that he had seen Ms. Butler there, that he had seen clothing there and that she was there on many different occasions. So, the Court finds his testimony to be credible.

As to whether or not they were married, I don't think it really matters since in this day, people always refer to themselves as spouses, whether they have a legal document or not.

So, based on that, the Court is going to deny the motion to suppress.

Appellant timely appealed.

## IV. Applicable Law

The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures. U.S. Const. amend. IV; *see also Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "The entry into a residence by police officers is a 'search' for purposes of the Fourth Amendment." *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011) (citing *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010)). A warrantless police entry into a residence is

6

presumptively unreasonable subject to a few specifically defined and well-established exceptions. *Id.*; *Jackson v. State*, 468 S.W.3d 189, 194 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

"Consent searches are an established exception to the warrant and probable cause requirements of the Fourth Amendment." *Balentine v. State*, 71 S.W.3d 763, 772 (Tex. Crim. App. 2002) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)). A third party may give valid consent to a search when she and the absent, non-consenting person share "common authority" over the premises or property, or if the third party has some "other sufficient relationship" to the premises or property. *Rodriguez,___S.W.3d___*, 2017 WL 2457441, at *13; *Limon*, 340 S.W.3d at 756. Common authority is shown by mutual use of the property by persons generally having joint access or control for most purposes. *Rodriguez,___S.W.3d___*, 2017 WL 2457441, at *13. "With joint access and control, it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his [or her] own right and that the others have assumed the risk that one of their number might permit the common area to be searched." *Id.* (citing *Limon*, 340 S.W.3d at 756).

In the absence of actual authority, consent may be validly obtained from an individual with apparent authority over the premises. *Rodriguez,___S.W.3d___*, 2017 WL 2457441, at *13. "Apparent authority is judged under an objective standard: 'Would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?'" *Id.* (quoting *Limon*, 340 S.W.3d at 756). Reasonableness is contingent on "widely shared social expectations" and "commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest." *Id.* (citing *Georgia v. Randolph*, 547 U.S. 103, 109 (2006)).

The State must prove actual or apparent authority by a preponderance of the

7

evidence. *Limon*, 340 S.W.3d at 757. On appeal, determinations of actual and apparent authority are reviewed de novo as mixed questions of law and fact. *Id*. Reviewing courts view the evidence in the light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling. *Id*.

## V.     Analysis

In a single issue, appellant argues the trial court abused its discretion by denying appellant's motion to suppress the evidence of cocaine and phencyclidine found in his residence without a warrant. Appellant contends that no actual or apparent authority was present to provide consent to police to search his residence and seize the drugs. Therefore, appellant claims that the search and seizure cannot be used as evidence to convict him of possession of cocaine with intent to deliver and possession of phencyclidine with intent to deliver. Appellant further argues that Butler was nothing more than a guest in appellant's residence with no authority to consent to a search. Appellant maintains "that a man of reasonable caution would not have believed that Butler has the authority to consent to the search of the premises."

Appellant's contentions are contradicted by the findings made by the trial court that are supported by the record. The trial court found officer Dorton's testimony to be credible. Officer Dorton testified that Butler exited from the same residence and door as the appellant and approached him and the other officers. She informed the officers that she had lived in the house for seven or eight months and that she was appellant's wife. Butler voluntarily told officers that appellant had drugs in the house. She specifically told the officers the kind of drugs in the house and the drugs' location inside the house. She voluntarily signed a written consent form permitting officers to search the residence. Officer Dorton further testified that

8

appellant referred to Butler as his wife, asking to speak to her. The trial court did not find Latrisha's testimony that Butler did not live there and was not appellant's wife to be credible. Additionally, the trial court found Latrisha's testimony to be contradicted by Griffin's testimony. The record supports the trial court's findings. *See Romero*, 800 S.W.2d at 543; *see Flores*, 177 S.W.3d at 13–14.

The trial court also found the officers had reason to believe at the time that Butler had the right to give permission to consent to the search. *See Rodriguez*,___S.W.3d___, 2017 WL 2457441, at *13; *see also Limon*, 340 S.W.3d at 756–59. The officers testified that they believed Butler to be the wife of appellant and not a guest, which gave her authority to voluntarily consent to the search of the residence. *See Brown v. State*, 212 S.W.3d 851, 868 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (opin. on reh'g) (defendant's wife had apparent authority to consent to a search of defendant's hotel room in which she was living). Additionally, as found by the trial court, the fact that mail addressed to both appellant and Butler was found in appellant's residence further substantiates the reasonable belief the officers had in Butler's apparent authority to give consent to search the residence. The purported consent from Butler served to make the search reasonable. *Rodriguez*,___S.W.3d___, 2017 WL 2457441, at *13; *Limon*, 340 S.W. at 757. The record supports the trial court's findings. *See Romero*, 800 S.W.2d at 543; *see Flores*, 177 S.W.3d at 13–14.

Although appellant contends that Butler told police officers about the drugs in the house in order to shift blame to the appellant, appellant neither offers evidence from the record to support this assertion nor does the record provide such evidentiary support. Moreover, an admission against one's penal interest can also be viewed as reinforcing credibility and as a factor indicating reliability. *See Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

We hold the trial court did not err by denying appellant's motion to suppress. Appellant's issue is overruled.

## VI.    Conclusion

Having overruled appellant's sole issue on appeal in both cases, we affirm the trial court's judgment.


/s/    John Donovan
Justice


Panel consists of Justices Boyce, Donovan, and Jewell.
Do Not Publish — TEX. R. APP. P. 47.2(b).