

**NUMBER 13-18-00670-CR**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

THE STATE OF TEXAS,                                                          Appellant,

v.

RICHARD RAMOS-DAVILA,                                                   Appellee.

### On appeal from the 148th District Court
### of Nueces County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Contreras and Justices Benavides and Longoria**
**Memorandum Opinion by Justice Longoria**

The State brings this interlocutory appeal of the trial court's order granting appellee

Richard Ramos-Davila's motion to suppress drugs found in his motel room. *See* TEX.

CODE CRIM. PROC. ANN. art. 44.01(a)(5) (permitting the State to appeal a pretrial order

granting a motion to suppress).  By a single issue, the State contends that the trial court erred in granting the motion to suppress.  We reverse and remand.

## I. BACKGROUND

On June 23, 2018, Officer John Ghezzi of the Corpus Christi Police Department received information that Ramos-Davila was staying at the Padre Motel in Corpus Christi. Ghezzi testified that Ramos-Davila was under surveillance for possible possession and distribution of narcotics.  According to Ghezzi, Davila was a known gang member and had been sending out Facebook messages looking for a gun.  Ghezzi confirmed that Davila's actions were "consistent with dealing drugs out of that room" in the motel. Although Ghezzi did not have a search warrant, Ghezzi was aware of an open arrest warrant for an unrelated offense of public intoxication for Ramos-Davila at the time of the surveillance.

During the investigation, Ghezzi observed Ramos-Davila coming in and out of his motel room frequently during a two-hour span.  When a vehicle containing another known gang member parked outside his motel room, officers arrested based on his outstanding warrant Ramos-Davila as he was walking towards the vehicle.  After detaining Ramos-Davila, officers conducted a protective sweep of the motel room; no weapons or narcotics were found in plain view.

According to Ghezzi, Ramos-Davila was Mirandized before being questioned about the motel room.  Ramos-Davila asserted he could not give consent to search the room because the room was his sister's and everything in the room belonged to her.

Ghezzi then spoke with Ramos-Davila's sister, Erikah Salazar, who was in the motel room.  She informed Ghezzi, "Yeah, there's drugs in here.  It's all his."  Salazar also

2

told Ghezzi that she had been staying in the room for several days. She then gave consent to search the room, both verbally and in writing.

Officers found packages of methamphetamine inside an unlocked black box on top of a bed and synthetic marihuana inside the drawer of a nightstand along with an identification card belonging to Ramos-Davila.

According to Ghezzi, Salazar never objected that the officers were going beyond the scope of her consent; rather, she helped the officers search and offered assistance, such as, "That's where the dope is" and "That's how it opens, there's no key to it."

On September 20, 2018, Ramos-Davila was indicted for possession, with intent to deliver, four grams or more but less than 200 grams of methamphetamine, a first-degree felony (count one); possession of four grams or more but less than 200 grams of methamphetamine, a second-degree felony (count two); and possession, with intent to deliver, less than twenty-eight grams of alprazolam, a state jail felony (count three). *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.112(d), 481.114(b), 481.115(d). Ramos-Davila then filed a motion to have the narcotics suppressed, alleging his sister lacked the authority to give consent to search the room and that the scope of consent did not extend to the closed black box. The trial court granted the motion and submitted the following findings of facts and conclusions of law:

1. [Ramos-Davila's] statement that the items were not his was made while he was under custodial arrest and without the *Miranda* warnings given to him. Based on the State's authorities in its Reply, the Court finds that consent to search is not an incriminating statement and that the *Miranda* warnings were not required.

2. [Ramos-Davila] did not attempt to flee or abandon the premises when he was taken into custody. His statement amounts to a decision not to incriminate himself.

3. Salazar was in the room for a sufficient period of time to gain authority to consent to the search of the room.

4. The officers had authority to seize the containers in question.

5. The consent to search did not extend to opening the drawer or the box on the bed.

6. There were no exigent circumstances that justified not obtaining a search warrant.

The Court concludes that a search warrant should have been obtained to search the drawer and the box on the bed, and, because the officers did not obtain a search warrant, [Ramos-Davila's] rights were violated.

The trial court granted Ramos-Davila's motion to suppress the narcotics recovered during the search of the room. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Amador v. State,* 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). We give almost complete deference to a trial court's findings of facts but we review de novo mixed questions of law and fact that do not depend on credibility or demeanor. *Id.* We generally uphold the trial court's findings if they are "supported by the record." *Miller v. State*, 393 S.W.3d 255, 262 (Tex. Crim. App. 2012).

Consent to search may be validly obtained from an individual with apparent authority over the premises. *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011). Apparent authority is judged under an objective standard: "would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?" *Id.* The State must prove actual or apparent authority by a preponderance of the evidence. *See id.* On appeal,

4

determinations of actual and apparent authority are reviewed de novo as mixed questions of law and fact. *See id.*

Generally speaking, a search is defined by "the object of the search." *United States* v. *Ross,* 456 U.S. 798, 824 (1982). However, "[t]he standard for measuring the scope of a search pursuant to consent is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Florida v. Jimeno*, 500 U.S. 248, 251 (1991). Objective reasonableness is a question of law reviewed de novo. *See Valtierra v. State*, 310 S.W.3d 442, 449 (Tex. Crim. App. 2010). This is a straightforward test that ignores the subjective intent of both the officer and citizen and solely analyzes what a reasonable person would believe the consent to include. *Id.*

### III. ANALYSIS

By one issue, the State contends that the trial court erred in granting Ramos-Davila's motion to suppress because the search was valid based on either abandonment or consent. We first address the consent sub-issue.

The State asserts that it obtained consent to search the property from Salazar. Ramos-Davila argues that Salazar was not a joint occupant of the motel room because she did not have equal control over the room and was only visiting Ramos-Davila for several days in the room. However, at the time of the search, Ramos-Davila told Ghezzi that he could not give consent to search the room because it belonged to Salazar. Also, Salazar consented to having the room searched and told the officers that she had been staying with Ramos-Davila for several days. The officers had also seen Salazar entering and exiting the room.

5

Additionally, in finding of facts and conclusions of law number three, the trial court found that "Salazar was in the room for a sufficient period of time to gain authority to consent to the search of the room." As previously stated, we review the trial court's determinations of actual and apparent authority de novo as mixed questions of law and fact. *See Limon*, 340 S.W.3d at 756. Reviewing courts view the evidence in the light most favorable to the trial court's rulings and assume that the trial court resolved any issues of historical fact or credibility consistently with its ultimate ruling. *Id*. Therefore, we conclude that a person of reasonable caution would believe, under these circumstances, that Salazar had authority over the premises. *See id.* Thus, the State validly received consent to search from someone with apparent authority over the premises. *See Bartie v. State*, No. 14-16-00674-CR, No. 14-16-00675-CR, 2017 WL 3272286, *4 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding that officers received consent from "common-law" wife even though there was conflicting testimony as to whether she lived at the home); *Valdez v State*, 336 S.W.3d 330, 335 (Tex. App.— San Antonio 2010, no pet.) (holding that a third party may consent to a search if they possess "equal control over and authority to use the premises being search."); *see also State v. Rodriguez*, 521 S.W.3d 1, 19 (Tex. Crim. App. 2017) (holding that a dorm room is analogous to a hotel room and a "third party can consent to a search to the detriment of another's privacy interest" if the third party has apparent authority over the place to be searched).

Ramos-Davila further asserts that even if the State had proper consent to search the room, the "consent would certainly not extend to closed containers." The trial court found in its findings of facts and conclusions of law that the consent did not extend to the

6

closed box and drawers in the nightstand. The State received consent from Salazar. As we discussed above, she had apparent authority over the room, and Ramos-Davila declared that everything in the room was hers. The State found drugs in a black box and in a drawer of a nightstand. When a person gives general consent to search without any specific limitations, they are giving officers consent to search any unlocked container that might contain what they are looking for. *See Jimeno*, 500 U.S. at 251–52; *Valtierra*, 310 S.W.3d at 450 (extending the rationale of *Jimeno* to a house search).

This Court recently addressed scope of consent in *Villarreal v State*, and even though the case involved a vehicle search, the parameters are the same. 565 S.W.3d 919, 929 (Tex. App.—Corpus Christi–Edinburg 2018, pet. ref'd). To determine whether the search exceeded the scope of consent, several factors shape the analysis: (1) the scope of the consent given, as defined by the object of the search; (2) whether the search inflicts physical damage on the vehicle or its contents; (3) whether the suspect places any limitation on his consent; (4) whether the suspect objects to the search; and (5) the legitimate utility of the compartment or container invaded. *Id*; *United States v. Gonzalez-Badillo*, 693 Fed. Appx. 312, 314–15 (5th Cir. 2017), *cert. denied*, 138 S.Ct. 1282 (2018); *United States v. Saucedo*, 688 F.3d 863, 867 (7th Cir. 2012) (utility). This Court further stated that

> if there is evidence that a defendant is in a position to object to the search, a failure to object to the breadth of the search is properly considered [as] an indication that the search was within the scope of the initial consent. A person's silence in the face of an officer's further actions may imply consent to that further action.

7

*Villarreal*, 565 S.W.3d at 930 (citations omitted).  Applying the same parameter, the scope of consent can easily be inclusive of the unlocked box on the bed and the drawer in the nightstand.

Neither Ramos-Davila nor Salazar objected to the officers' search of the box or the nightstand drawer; in fact, Salazar volunteered assistance, informing the officers where to find the drugs and how to open the box.  Under these circumstances, a reasonable person would believe that the black box and the drawer were within the scope of the consent given.  *See Valtierra*, 310 S.W.3d at 449*.* Accordingly, the trial court erred in granting the motion to suppress.  *See Amador,* 221 S.W.3d at 673.

Because we have concluded that the search was valid due to consent, we need not address the State's other sub-issue concerning abandonment.  *See* TEX. R. APP. P. 47.1.  We sustain the State's sole issue.

## IV. CONCLUSION

We reverse the trial court's order granting the motion to suppress and remand to the trial court for further proceedings in accordance with this opinion.


NORA L. LONGORIA
Justice


Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
3rd day of October, 2019.

8