

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00185-CR

TRACY LYNN NEW                                                  APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellant Tracy Lynn New appeals her conviction of possession of a dangerous drug.  In her sole point, New argues that the trial court erred by denying her motion to suppress evidence obtained during the search of her apartment because the search violated her constitutional and statutory rights

---

[1]*See* Tex. R. App. P. 47.4.

under the Fourth and Fourteenth Amendments to the United States Constitution, Article 1, Section 9, of the Texas constitution, and Texas Code of Criminal Procedure article 38.23. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

New and her two children lived in an apartment at 9211 Dale Lane. Child Protective Services (CPS) received a call from someone who had been in New's apartment and had seen her smoke methamphetamine with her child sitting next to her and had seen a .45 caliber weapon lying on a table in front of her and her child. CPS gave the complaint an emergency prioritization, requiring the investigator to respond within twenty-four hours. The next morning, CPS investigator Sandra Boyle responded to the call by visiting New's children's school. Boyle spoke with one of New's children, but the other child did not go to school that day. Boyle went to New's apartment complex and spoke with the property manager, Misty Haynes. Haynes told Boyle that she had received several complaints of drug activity at New's apartment and explained that she was going to New's apartment to issue an eviction notice and to confiscate some of New's property as part of a contractual lien under the lease.[2] Boyle also called police to request an officer to accompany her to New's apartment for protection. Officer Michael Wallace and another officer with the White Settlement Police

---

[2]Haynes testified that she had previously attempted to post an eviction notice in New's apartment because New was several months late in her rent payments but that New had changed the locks on her door and would not answer the door when Haynes knocked.

Department arrived at the property management office, and the officers, Boyle, and Haynes went to New's apartment.

They knocked on the door, and when no one answered, Boyle announced herself as a CPS investigator. Haynes and Officer Wallace also identified themselves and knocked on the door. Haynes announced that she was there to serve New with notice of eviction and attempted to open the door. Haynes saw someone look out New's apartment window, but no one opened the door. Haynes called for a maintenance custodian, who arrived and attempted to open the door with a key. The custodian said that he felt someone holding the door on the inside. Haynes announced that she was going to make an entry into the apartment either by breaking the window or by drilling the lock per the lease agreement. At this point, New's mother, Ms. Tucker, opened the door.[3] Boyle asked for permission to enter the apartment, which Ms. Tucker gave. Haynes, Boyle, and Officer Wallace entered the apartment, and Ms. Tucker told them that New and her daughter were in the bathroom.[4] Boyle and Officer Wallace heard the toilet flush several times. Officer Wallace knocked on the bathroom door, and New responded that "they were using the restroom." Several minutes later,

---

[3]The State's brief refers to New's mother as Ms. Turner; at trial, Boyle initially called her Ms. Turner but corrected herself and clarified that her name is Ms. Tucker. We will therefore call her Ms. Tucker.

[4]The other officer remained outside the apartment. Officer Wallace testified that he considered himself a bodyguard for Boyle and went inside to protect her.

3

New and her child came out of the bathroom. Officer Wallace asked New if she had "flushed everything," at which point New said that she did not have anything to flush and that Officer Wallace could search her apartment. Officer Wallace told New to sit down on her living room couch, and he asked for her permission to search the apartment. New consented. Officer Wallace found prescription muscle relaxant pills underneath the fabric to a car seat. He arrested New, and her children were placed in foster care.

New filed a motion to suppress, and after a hearing, the trial court took the matter under consideration. The trial court subsequently denied New's motion to suppress by written order that contained findings of fact and conclusions of law. The trial court found that Ms. Tucker voluntarily allowed Boyle, Haynes, and Officer Wallace to enter New's apartment, found that New gave Officer Wallace permission to search her apartment, and concluded that Officer Wallace's entry into New's residence and subsequent search of her residence were consensual. New pleaded nolo contendere to possession of a dangerous drug, the trial court found her guilty, and pursuant to the terms of a plea bargain, the trial court sentenced her to a $100 fine, 20 days' confinement, and 6 months' driver's license suspension.

### III. STANDARD OF REVIEW AND LAW ON WARRANTLESS SEARCHES

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

4

In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions de novo. *Amador*, 221 S.W.3d at 673; *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the

5

trial court's ruling, supports those fact findings. *Kelly,* 204 S.W.3d at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

The Fourth Amendment protects against unreasonable searches and seizures by government officials. U.S. Const. amend. IV; *Wiede*, 214 S.W.3d at 24. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *See Young v. State*, 283 S.W.3d 854, 872 (Tex. Crim. App.), *cert. denied*, 130 S. Ct. 1015 (2009); *Amador*, 221 S.W.3d at 672. A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Amador*, 221 S.W.3d at 672. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable. *Id.* at 672–73; *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

6

Whether a search is reasonable is a question of law that we review de novo. *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004). Reasonableness is measured by examining the totality of the circumstances. *Id.* at 63. It requires a balancing of the public interest and the individual's right to be free from arbitrary detentions and intrusions. *Id.* A search conducted without a warrant is per se unreasonable unless it falls within one of the "specifically defined and well-established" exceptions to the warrant requirement. *McGee v. State*, 105 S.W.3d 609, 615 (Tex. Crim. App.), *cert. denied*, 540 U.S. 1004 (2003); *see Best*, 118 S.W.3d at 862.

## IV. WARRANTLESS ENTRY WAS CONSENSUAL

New argues in one point that Officer Wallace's warrantless entry into her home violated her right to be free from unreasonable searches and seizures and was not justified by consent or other exceptions to the search warrant requirement. The State argues that the entry was consensual and presents several alternative arguments to uphold the search.

Consent to entry is one of the well-established exceptions to the warrant requirement. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973); *see Meekins v. State*, 340 S.W.3d 454, 458 (Tex. Crim. App. 2011); *Johnson v. State*, 226 S.W.3d 439, 443–47 (Tex. Crim. App. 2007). Consent must be positive, but it may be given orally or by action, or shown by circumstantial evidence. *Meekins*, 340 S.W.3d at 458; *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). The validity of an alleged consent to

7

search is a question of fact to be determined from the totality of the circumstances. *Valtierra*, 310 S.W.3d at 448. The standard for measuring the scope of consent is one of objective reasonableness, or what an ordinary reasonable person would understand to be consent under the same circumstances. *Johnson*, 226 S.W.3d at 443; *see Valtierra*, 310 S.W.3d at 450.

Consent "must 'not be coerced, by explicit or implicit means, by implied threat or covert force.'" *Carmouche v. State*, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000) (quoting *Schneckloth*, 412 U.S. at 219, 93 S. Ct. at 2043–44). Nor is consent voluntary when it results from "'no more than acquiescence to a claim of lawful authority.'" *Id.* (quoting *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S. Ct. 1788, 1792 (1968)). Although the United States Constitution requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires clear and convincing evidence. *See id.* Because issues of consent are necessarily fact intensive, a trial court's finding of voluntariness must be accepted on appeal unless it is clearly erroneous. *Meekins*, 340 S.W.3d at 460; *Johnson*, 226 S.W.3d at 443.

A third party may properly consent to a search when he has control over and authority to use the premises being searched. *United States v. Matlock*, 415 U.S. 164, 171, 94 S. Ct. 988, 993 (1974); *Balentine v. State*, 71 S.W.3d 763, 772 (Tex. Crim. App. 2002); *see Georgia v. Randolph*, 547 U.S. 103, 106–23, 126 S. Ct. 1515, 1518–28 (2006). Additionally, a third party's consent is valid under the doctrine of apparent authority if the officer reasonably believes at the time of

8

the search that the third party possesses common authority over the premises, even if that third party does not in fact possess such authority. *Illinois v. Rodriguez*, 497 U.S. 177, 186–89, 110 S. Ct. 2793, 2800–01 (1990); *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011). The State has the burden of establishing common or apparent authority. *Rodriguez*, 497 U.S. at 181, 110 S. Ct. at 2797; *Welch v. State*, 93 S.W.3d 50, 53 (Tex. Crim. App. 2002); *see also Limon*, 340 S.W.3d at 757 & n.15.

Here, the trial court's written findings of fact state that several people went to New's apartment, including:

- a representative of the apartment complex [(Haynes)] who was seeking to serve [New] an eviction notice,

- a child protective services worker [(Boyle)] there to check on the welfare of [(New's)] children, and

- a police officer [(Officer Wallace)] there to insure the safety of the child protective services worker as there were concerns of controlled substances and firearms in the residence.

The trial court found that "[t]he door was ultimately opened by [Ms. Tucker] in response to repeated requests of the apartment complex representative [(Haynes)] and all present were voluntarily allowed to enter." Haynes testified that when Ms. Tucker opened the door, Boyle asked for permission to enter, and Ms. Tucker responded by flinging the door open and saying, "Come on in." Boyle testified that when Ms. Tucker opened the door, she immediately said, "[New] is in the bathroom and she is scared to come out." Boyle said that she then asked for permission to enter, which Ms. Tucker granted. Officer Wallace testified that

9

when Ms. Tucker opened the door, Boyle asked if she could go inside and speak with them and that she was given permission; Officer Wallace testified, "So when she went in, I went in with her."

In determining that a consensual entry occurred, the trial court had to decide what an objectively reasonable person in Officer Wallace's shoes would conclude by Ms. Tucker's words and actions, in other words, whether an objectively reasonable person would have concluded that Ms. Tucker's permission to enter extended only to Boyle or also to Officer Wallace. *See Meekins*, 340 S.W.3d at 463. The totality of the circumstances supports the trial court's finding that Ms. Tucker's consent extended to Officer Wallace. *See id.* (noting that if appellant had intended to refuse consent to search of vehicle, "it seems reasonable that he would have objected, complained, or refused to get out of his car"); *see also Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004) (evidence that appellant motioned for officer to "come in" supported trial court's ruling that appellant consented to police entry into home).[5]

---

[5]New relies in large part on *Roth v. State*, 917 S.W.2d 292, 300 (Tex. App.—Austin 1995, no pet.), but in that case, the officer requested entrance into the appellant's home and the appellant did not verbally grant permission to enter—the officer testified that the "door opened enough for [him] to just follow [the appellant] right in." The appellate court held that the singular act of opening the front door did not satisfy the State's burden of demonstrating by clear and convincing evidence that the appellant voluntarily consented to the officer entering his home. *Id.* Here, as detailed above, Ms. Tucker opened the door and verbally gave permission to enter the apartment, either by saying, "Come on in," or by saying "yes" to Boyle's request to enter.

Regarding the authority of Ms. Tucker to consent to Officer Wallace's entry into her daughter's apartment, Officer Wallace testified that he believed Ms. Tucker lived in the apartment. Haynes also testified that she assumed Ms. Tucker was living there although Ms. Tucker was not on the lease. Haynes said that after New was arrested, Ms. Tucker stayed at the apartment, and the apartment complex "tried to get [her] to leave a couple weeks after that." The totality of the circumstances shows that Ms. Tucker possessed either common authority or apparent authority over the apartment. *See Welch*, 93 S.W.3d at 53 (common authority); *see also Rodriguez*, 497 U.S. at 186–89, 110 S. Ct. at 2800–01 (apparent authority); *Limon*, 340 S.W.3d at 756 (apparent authority).

Implicit in the trial court's finding of consensual entry is also a finding that Ms. Tucker was not coerced by implied threat or covert force when she gave permission to enter the apartment. *See Meekins*, 340 S.W.3d at 460; *Johnson*, 226 S.W.3d at 443. Before Ms. Tucker opened the door, Haynes, Boyle, and Officer Wallace knocked and announced who they were. Haynes further announced that she was there to post an eviction notice and that she would force entry if someone did not open the door. But regardless of Haynes's actions, Officer Wallace and the other officer at the scene did not make threats, did not display a weapon, or otherwise show force. *See Johnson*, 803 S.W.2d at 287 (considering facts of few police officers present and no use of weapons as factors supporting voluntariness of consent and noting that consent given in response to threat to seek or obtain search warrant may still be upheld as

11

voluntary); *Richardson v. State*, No. 05-10-00439-CR, 2011 WL 3435373, at *2 (Tex. App.—Dallas Aug. 8, 2011, no pet.) (mem. op., not designated for publication) (considering, in case involving conflicting evidence of voluntariness of consent, that although appellant testified she was "afraid" of the officers and interpreted their statements as threats to call CPS and to return with a search warrant, appellant was not threatened with arrest and no evidence showed that officers directed any coercion or force towards her or her children); *see also Schneckloth*, 412 U.S. at 229, 93 S. Ct. at 2048–49 (explaining that, for consent to be voluntary, it must be free of "official" or "police" coercion).

Considering all of the circumstances and giving proper deference to the trial court's findings, we hold that the totality of the circumstances supports the trial court's ruling that Ms. Tucker, acting with authority to do so, voluntarily consented to Officer Wallace's entry into New's apartment. *See Wiede*, 214 S.W.3d at 24; *Kelly*, 204 S.W.3d at 818. Having upheld the trial court's finding that Officer Wallace's initial entry was consensual, we need not address New's challenge to Officer Wallace's subsequent search of her apartment, in which she argues only that her consent to search was tainted by the initial illegal entry into her home. Consequently, for the above reasons, we hold that the trial court did not err by overruling New's motion to suppress, and we overrule New's sole point.

## V. CONCLUSION

Having overruled New's sole point, we affirm the trial court's judgment.


SUE WALKER
JUSTICE

PANEL:  LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 1, 2013