# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00387-CR

**Keith Lamar Warren, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
### NO. 64415, THE HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Following the denial of his pretrial motion to suppress, appellant Keith Lamar Warren pled guilty, pursuant to a plea bargain, to possession of 400 grams or more of a controlled substance with intent to deliver, and was sentenced to 45 years in the Texas Department of Criminal Justice. *See* Tex. Health & Safety Code § 481.112(a), (f). In a single point of error on appeal, appellant complains about the trial court's denial of his motion to suppress. Finding no error in the trial court's ruling, we affirm the judgment of conviction.

## BACKGROUND

Officers from the Killeen Police Department went to 3701 YS Pak Court, Apartment H, to search for a female fugitive who had listed that address on her bail bond records. Two officers approached the front door of the residence while another officer covered the rear of the residence. As they approached the front door, an adult male, later identified as Terrance Ford, opened the inner

door behind the security door.[1] The officers could immediately smell the distinctive odor of burning marijuana coming from inside the apartment and could see lingering smoke inside the room.

The officers, in standard police uniform, identified themselves to Ford and advised him that they were looking for the fugitive female. Ford informed them that she did not live there and he did not know who she was. To further investigate the fugitive's whereabouts, one of the officers, Officer Richard Bradley, asked Ford to produce identification. The officer could see two other males, later identified as the appellant, Keith Lamar Warren, and his brother, Kevin Lamar Warren, in the living room. After the officer's request for identification, Ford walked back into the living room area and Officer Bradley saw all three men immediately go into the kitchen. The officer could not see into the kitchen but heard shuffling and movement noises coming from the kitchen area. Ford returned to the door without identification. When Officer Bradley again asked for identification, Ford went upstairs indicating he needed to retrieve it from there.

Becoming concerned for officer safety, Officer Bradley tried the security door and found it to be locked. Ford then returned downstairs, still without identification. The officer asked a third time for identification and Ford retrieved a photo identification from a cigar box on the television just inside the doorway. Ford then removed keys from his pocket, unlocked the security door, opened the door, stood aside, and motioned for the officers to enter the apartment.[2] The

---

[1] The record reflects that this outer security door, called the "burglar bar door" by the parties, consisted of metal bars and a mesh screen that allowed the passage of air.

[2] This testimony was contradicted at the suppression hearing by Ford's testimony. Ford testified that he only unlocked and opened the security door to provide the officer with his identification but Officer Bradley put his foot in the door, pulled the door open, and, along with the other officer who had her gun drawn, forced his way into the apartment.

2

officers entered the apartment and Officer Bradley again advised the men that they were looking for the female fugitive. He also asked about the marijuana smoke in the room. At that point, Ford produced a baggie of marijuana and gave it to Officer Bradley, stating that it was all that they had. The men indicated that they had been smoking it while watching a game on television.

Concerned that all three men had quickly gone into the kitchen as soon as they heard the name of the fugitive the police sought, and unaware of whether others were present in the apartment, Officer Bradley went into the kitchen area to check for the fugitive and conduct a protective sweep. Upon entering the kitchen, the officer immediately saw a large Pyrex measuring cup that contained a milky white liquid next to the sink. He also observed that one of the doors to a cabinet above the stove was open and inside he saw a box of Ziploc baggies, a digital scale, and a clear plastic container that had a white powder residue on it. There was a portion of the kitchen cabinetry that formed an elbow or L shape and, based on his prior experience of finding a person concealed in such a cabinet, Officer Bradley believed it might be large enough to hide a person. He opened the cabinet door to check and saw an open shoe box containing four Pyrex measuring cups with a white crusty residue on them. From his years of law enforcement experience, the officer recognized the items he observed in the kitchen as those used in the manufacture of crack cocaine. At this time, Officer Bradley terminated any further protective sweep of the kitchen and apartment.

After consulting with his sergeant, Officer Bradley notified a detective with the Killeen Police Organized Crime Unit who, based in part on the observations of the officer, obtained a warrant to search Ford's apartment. During the search conducted pursuant to that warrant, officers discovered 3.2 kilograms of cocaine, 602 grams of marijuana, 330 grams of promethazine, a hand

3

gun, and various drug paraphernalia. This discovery, in combination with additional police investigation, prompted the officers to obtain a subsequent search warrant for another apartment located in the same complex, Apartment C, where appellant's brother resided. The search conducted pursuant to that warrant yielded an additional 30 grams of cocaine, another handgun, and more drug paraphernalia.

Ford, appellant, and appellant's brother were arrested that night and subsequently each charged by indictment with possession of 400 grams or more of a controlled substance, namely cocaine, with intent to deliver. All three filed separate motions to suppress, and each adopted the motions filed by his co-defendants. The motions were consolidated for the suppression hearing.[3] The trial court denied all of the defense motions to suppress.

## DISCUSSION

Appellant contends that the trial court erred in denying his motion to suppress because the officers lacked probable cause to enter into Ford's apartment. Thus, he argues, the warrantless entry and subsequent search of the kitchen by Officer Bradley were illegal.[4]

---

[3] The trial court actually conducted two hearings on the motions to suppress. In the first hearing, the defendants sought to suppress evidence derived from the warrantless entry into Ford's apartment. In the second hearing, conducted on two separate days, the defendants sought to suppress evidence seized during the searches of Ford's apartment and appellant's brother's apartment that were conducted pursuant to the subsequently obtained search warrants.

[4] Although not at issue in this appeal, we note that there is some question as to whether appellant has standing to contest the search of Ford's apartment. *See State v. Betts*, 397 S.W.3d 198, 203 (Tex. Crim. App. 2013) ("The rights secured by the Fourth Amendment and Article I, Section 9, are personal, and accordingly, an accused has standing to challenge the admission of evidence obtained by an 'unlawful' search or seizure only if he had a legitimate expectation of privacy in the place invaded."); *Kothe v. State*, 152 S.W.3d 54, 59 (Tex. Crim. App. 2004) ("[A defendant] has no standing to complain about the invasion of someone else's personal rights."). At the suppression

4

We review a trial court's ruling on a motion to suppress evidence for an abuse of discretion, applying a bifurcated standard of review where we give almost total deference to a trial judge's findings of historical fact and credibility determinations that are supported by the record, but review questions of law de novo. *Arguellez v. State*, 409 S.W.3d 657, 662 (Tex. Crim. App. 2013); *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010). We will affirm the trial court's ruling if it is reasonably supported by the record and is correct under any theory of law applicable to the case. *Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).

The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011); *see* U.S. Const. amend. IV; *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990). The entry into a residence by police officers is a "search" for purposes of the Fourth Amendment. *Limon*, 340 S.W.3d at 756; *Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010). A warrantless police entry into a residence is presumed unreasonable unless the entry falls within one of a well-defined group of exceptions. *Limon*, 340 S.W.3d at 756; *Valtierra*, 310 S.W.3d at 448.

Voluntary consent is one such exception. *Rodriguez*, 497 U.S. at 181; *Limon*, 340 S.W.3d at 756; *Valtierra*, 310 S.W.3d at 448. An owner's or occupant's voluntary consent

---

hearing, the State "waive[d] standing," apparently based on the fact that the probable cause affidavit and search warrant for Ford's apartment asserted that the premises was "in charge of and controlled by" all three men. *See Betts*, 397 S.W.3d at 203 (whether defendant was legitimately in place invaded and whether he had complete dominion or control and right to exclude others are circumstances of search to be examined in determining whether defendant has demonstrated objectively reasonable expectation of privacy); *but see Minnesota v. Carter*, 525 U.S. 83, 90 (1998) (legitimate privacy expectation of overnight guest does not extend to casual visitor or guest who is merely present with consent of homeowner). We do not address the issue of whether appellant had standing to contest the search.

makes the entry into a residence by police officers constitutionally "reasonable." *Rodriguez*, 497 U.S. at 181; *Valtierra*, 310 S.W.3d at 448. Consent may be given orally or by action, or may be shown by circumstantial evidence. *State v. Weaver*, 349 S.W.3d 521, 526 (Tex. Crim. App. 2011); *Valtierra*, 310 S.W.3d at 448. The validity of an alleged consent to search is a question of fact to be determined from the totality of the circumstances. *Ohio v. Robinette*, 519 U.S. 33, 40 (1996); *Weaver*, 349 S.W.3d at 526; *Valtierra*, 310 S.W.3d at 448. The State must prove voluntary consent by clear and convincing evidence. *Weaver*, 349 S.W.3d at 526; *Valtierra*, 310 S.W.3d at 448.

At the suppression hearing, the trial court heard testimony from Officer Bradley that Ford invited the officers into his apartment by unlocking the security door, opening the door, motioning for the officers to come in, and stepping back to accommodate their entry. In his brief, appellant notes evidence at the hearing that contradicted Officer Bradley's testimony and asserts that the trial court "did not properly assess all of the information." However, at a suppression hearing, the trial judge is the sole trier of fact and exclusive judge of the credibility of the witnesses and the weight to be given to their testimony. *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). Further, unless the trial court abuses its discretion by making a finding unsupported by the record, we defer to the trial court's findings of fact and will not disturb them on appeal. *State v. Johnson*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011); *Guzman*, 955 S.W.2d at 89; *Miller v. State*, 335 S.W.3d 847, 854 (Tex. App.—Austin 2011, no pet.). The trial court made fact findings and conclusions of law that Officer Bradley was lawfully at Ford's apartment to look for the female fugitive and that he properly

6

entered the apartment only after being invited into the residence by Ford. *See Gallups v. State*, 151 S.W.3d 196, 201 (Tex. Crim. App. 2004) (consent to enter home could be inferred from defendant's action of motioning officer to come forward). These findings are supported by the record.

Consent to enter a residence, however, does not, without more, provide consent for a police officer to search the entire residence or objects therein. *Valtierra*, 310 S.W.3d at 448. The scope of a search is usually defined by its expressed object. *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *Weaver*, 349 S.W.3d at 526. The "standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect?" *Jimeno*, 500 U.S. at 251; *Weaver*, 349 S.W.3d at 526.

Here, Ford invited the police officers into his apartment during a conversation in which he was advised that the police were at his apartment looking for a female fugitive. Based on the exchange between Officer Bradley and Ford, a reasonable person would have understood that the purpose for which the officers entered the apartment, with Ford's permission, was to search for the fugitive. After entering the apartment, Officer Bradley reiterated the officers' purpose of searching for the fugitive. He then went into the kitchen—the area where he saw the men go immediately after he initially advised Ford that they were looking for the fugitive and where he then heard shuffling and movement—to check for the fugitive. The officer saw contraband in plain view and observed a kitchen cabinet that he thought might possibly conceal a person. He opened the cabinet to check for the fugitive and found additional contraband, and immediately ceased this

7

activity. He did not search the kitchen or apartment any further. His search was consistent with the consent Ford gave when he invited the officers into his apartment knowing they were looking for the fugitive. *See Miller v. State*, 393 S.W.3d 255, 266 (Tex. Crim. App. 2012) ("If an officer is invited or permitted to come into a house for a particular purpose (such as to look for a particular person or object), the scope of the consent to enter normally includes consent to search those areas in which the person or object would reasonably be found." (quoting *Valtierra*, 310 S.W.3d at 450)).

Another exception to the necessity of a search warrant is a "protective sweep" performed by police officers. *Maryland v. Buie*, 494 U.S. 325, 327 (1990). A protective sweep is a "quick and limited search of premises . . . conducted to protect the safety of police officers or others." *Reasor v. State*, 12 S.W.3d 813, 815 (Tex. Crim. App. 2000). The sweep must not be a "full search of the premises" and the searching officers must possess "a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene." *Id.* at 816.

Officer Bradley testified that as he approached the apartment, the inner door was opened and he smelled the odor of burning marijuana and saw lingering smoke inside. Once he advised Ford that they were looking for the female fugitive, he saw Ford and the two other men move quickly into the kitchen, where he was unable to observe them, and he then heard shuffling and movement. After entry into the apartment on Ford's invitation, the three men admitted smoking marijuana and Ford relinquished possession of more of the illegal substance. Officer Bradley expressed that under these circumstances—the quick retreat to the kitchen in response to the mention of the fugitive's name, the noises he subsequently heard coming from that area, and the presence of

narcotics—he determined that he needed to perform a security sweep for officer safety. The officer testified to specific and articulable facts permitting the trial court to find that the officer had an objectively reasonable belief that a person in the kitchen posed a danger to him or other persons in the apartment, justifying his entry into the kitchen for a brief search for any other persons present. *See Ramirez v. State*, 105 S.W.3d 730, 743 (Tex. App.—Austin 2003, no pet.) (officer was permitted to sweep garage room in order to establish that no individuals were present). Officer Bradley's search was limited to a protective sweep of the kitchen area—where the men scurried and he heard the suspicious activity—and was limited to those places where he believed a person may be found.

In addition to the fact findings and conclusions of law discussed previously, the trial court made fact findings and conclusions that Officer Bradley (1) properly opened the kitchen cabinet door to search for a concealed person, (2) conducted a proper protective sweep of the interior of the apartment, and (3) made proper plain-view observations of narcotics and narcotics paraphernalia. The court further concluded that the observations Officer Bradley made established probable cause for the search warrant of Ford's apartment and that the subsequent search of Ford's apartment, along with the police investigation conducted in connection with that search, yielded additional information and evidence that established probable cause to search Apartment C, Kevin Warren's apartment. *See State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) (probable cause exists when, under totality of circumstances, there is fair probability that contraband or evidence of crime will be found at specified location at time warrant is issued). The record supports these findings and conclusions.

Viewed in the light most favorable to the trial court's ruling, the record reflects that Ford invited the police into his apartment when they advised him that they were searching for the female fugitive and that once inside Officer Bradley's search did not exceed the permissible scope of Ford's consent nor that of a protective sweep. The search conducted during the protective sweep and pursuant to Ford's consent yielded evidence sufficient to establish probable cause to obtain a search warrant for Ford's apartment. The execution of that search warrant yielded further evidence that, together with information obtained in the course of the connected police investigation, established probable cause to obtain a search warrant for Kevin Warren's apartment. Therefore, we conclude that the trial court did not abuse its discretion in denying appellant's motion to suppress.[5] We overrule his sole point of error.

## CONCLUSION

Finding no abuse of discretion in the trial court's denial of appellant's motion to suppress, we affirm the judgment of conviction.

---

[5] Appellant also contends that exigent circumstances do not provide an exception to the warrant requirement in this case. The trial court made no fact findings or conclusions concerning exigent circumstances. Because we conclude that the trial court's ruling was correct under both the consent and protective sweep exceptions to the warrant requirement, we do not address exigent circumstances. *See Young v. State*, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009) (appellate court will affirm trial court's ruling on motion to suppress if it is reasonably supported by record and is correct under any theory of law applicable to case); *see also* Tex. R. App. P. 47.1.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Affirmed

Filed:   March 20, 2014

Do Not Publish

11