# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-15-00053-CR

**Kevin Duane Drisdale, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT
## NO. 71785, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Kevin Duane Drisdale was indicted for the offense of possession of a controlled substance with intent to deliver. *See* Tex. Health & Safety Code § 481.112. After the trial court denied his motion to suppress evidence, appellant pleaded guilty to the offense and true to an enhancement paragraph, and the trial court sentenced him in accordance with a plea agreement. On appeal, appellant challenges the denial of his motion to suppress. For the reasons that follow, we affirm.[1]

---

[1] Because the parties are familiar with the facts of the case and its procedural history, we do not recite them in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex. R. App. P. 47.1, 47.4.

## BACKGROUND

Around 4:15 a.m. on August 11, 2013, police officers with the City of Killeen were dispatched to investigate a 911 hang-up call at a two-story apartment building. When they arrived at the apartments, they were "flagged" down by Brenda Layton who identified herself as the 911 caller and a co-tenant with appellant of a second-floor apartment.[2] She pointed to appellant who was standing on the second floor walkway of the apartments and told the officers that "he's going to run. He's got dope and he's on parole." She also told the officers that appellant "interrupted that emergency telephone call disabling the cell phone" and slapped her. One of the officers then made contact with appellant, and he confirmed that he lived in the apartment but asked if he could leave to go to the gym to "calm down." After the officer said that he could leave, the officer believed that appellant had left to go to the gym.[3]

The officers then accompanied Layton to the apartment to search for her car keys and cell phone. Layton told the officers that she was "afraid," that she "had been trying to move out" of the apartment because appellant was "selling narcotics in the residence," and that appellant kept the

---

[2] Testimony at the suppression hearing supported a finding that Layton and appellant were both on the apartment's lease.

[3] One of the officers was in training, and she testified during the suppression hearing about the officers' reasons for letting appellant leave when they initially made contact with him:

> [Layton] had stated that [appellant] had hit her, however at that point we felt it was—I stood by what the senior officer made the decision because there was no back up, there was no one to help us. We were alone. I was in training, that it would be best for [appellant] to leave the scene which we can always revisit or come back with a warrant.

She also testified that, after this initial contact, appellant "walked down the stairwell and left."

2

narcotics in a "large brown box." Layton gave the officers verbal permission to look in the apartment for the car keys, cell phone, and "drugs." One of the officers accompanied Layton to the bedroom, and she verbally gave the officer permission to look in the brown box that was on a shelf in an open bedroom closet. According to the officer, it was not locked, and there was no key to unlock it.[4] The box contained "[b]aggies, razor blades, digital scale and a substance [the officer] believe[d] to be crack cocaine."

The officer returned the brown box to the shelf in the closet "for safety reasons" when he heard appellant return to the apartment and then went to speak with him. Appellant explained to the officers that he had returned to the apartment to get his headphones for his workout and that the headphones were located in the bedroom. The officers escorted appellant to the bedroom to get the headphones. While they were in the bedroom, appellant lifted the mattress, and Layton's cell phone was between the mattress and box springs. Appellant thereafter was placed under arrest for interference with an emergency call. After appellant was arrested and placed in a patrol car, a detective arrived at the apartments to assist with the investigation because the officers had located narcotics. Layton signed a written consent to search form, and the detective then searched the apartment and located the narcotics in the brown box.

Appellant filed a pre-trial motion to suppress evidence obtained from the search and his arrest, arguing that the officers had violated his constitutional and statutory rights under the

---

[4] During the suppression hearing, there was conflicting evidence presented about whether the brown box was locked and the opening mechanism on the box. A photograph of the box was admitted as an exhibit during the hearing, but the box's opening mechanism, if any, is unclear from the photograph.

3

Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution; Article I, sections 9, 10, and 19 of the Texas Constitution; and article 38.22 of the Texas Code of Criminal Procedure. U.S. Const. amend. IV, V, VI, XIV; Tex. Const. art. I, §§ 9, 10, 19; Tex. Code Crim. Proc. art. 38.22. The witnesses at the hearing on the motion to suppress evidence were the responding officers to the 911 call and the detective who subsequently was dispatched to the apartments. The officers and the detective provided testimony about their interactions and contact with Layton and appellant, their search of the apartment, and the location of the brown box and its contents. The officers testified that appellant confirmed that he was a co-tenant and had clothes in the bedroom closet, that the brown box belonged to appellant, and that they did not ask him for consent to search the apartment or the brown box. The exhibits included the written consent form that Layton signed.

At the conclusion of the hearing, the trial court denied the motion to suppress and stated findings on the record, including that appellant and Layton "apparently both live in the apartment," that Layton "detailed information regarding interference with 911, as well as physical assault, and reportedly indicated the defendant was selling drugs and was on parole and might run," that she "as the owner of the apartment [had] given consent to search after explaining that [appellant] had taken her keys and her cell phone and she gave consent to the police officers to help her look and search for the keys and the cell phone." The trial court also found that the closet that contained the brown box also contained clothing that belonged to both of them and that the drugs were discovered with Layton's consent and during the search to find her car keys and cell phone.

4

The State and appellant thereafter entered into a written plea agreement, and the trial court assessed punishment at confinement for twenty years in accordance with the plea agreement. After the trial court denied appellant's motion for new trial, this appeal followed.

## DISCUSSION

In his sole issue, appellant argues that the trial court erred in denying his motion to suppress evidence because Layton's consent to search "did not extend to the contents" of the brown box "opened and viewed by the law enforcement officers and seized by the law enforcement officers without a search warrant." He concedes that Layton had the authority to admit the officers to the apartment and to conduct a search for her cell phone and keys but argues that the State "failed to prove by clear and convincing evidence the co-tenant of appellant had common authority to authorize the opening of the [brown box] attributed to appellant or to seizure of the contents without a warrant." Appellant refers to Layton as an "informant" and argues that a proper search warrant could have been obtained.

### Standard of Review

We apply a bifurcated standard of review to a trial court's ruling on a motion to suppress evidence. *Wilson v. State*, 311 S.W.3d 452, 457–58 (Tex. Crim. App. 2010) (citing *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). Under that standard, we defer to the trial court's determination of historical facts "if supported by the record," *Wade v. State*, 422 S.W.3d 661, 666 (Tex. Crim. App. 2013), but we review de novo the trial court's application of the law to those facts, *Wilson*, 311 S.W.3d at 458. Similarly, we "afford almost total deference"

5

to rulings on mixed questions of law and fact when the resolution of those questions depends on the evaluation of credibility and demeanor but review de novo mixed questions of law and fact that do not depend on an evaluation of credibility and demeanor. *State v. Johnston*, 336 S.W.3d 649, 657 (Tex. Crim. App. 2011). We also review de novo purely legal questions. *Id.*

In reviewing a trial court's ruling on a motion to suppress evidence, we view the evidence "in the light most favorable to the trial court's ruling." *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). "When a trial court makes explicit fact findings, the appellate court determines whether the evidence (viewed in the light most favorable to the trial court's ruling) supports these fact findings." *Id.* "The appellate court then reviews the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling." *Id.* In a suppression hearing, the trial court is "the sole trier of fact and judge of credibility of the witnesses and the weight to be given to their testimony." *St. George v. State*, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007).

**Consent to Search by Co-Tenant**

Consent to search is an established exception to the constitutional requirement of a search warrant. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973); *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002); *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex. Crim. App. 1997). "A third party can consent to a search to the detriment of another's privacy interest if the third party has actual authority over the place or thing to be searched." *Hubert v. State*, 312 S.W.3d 554, 560–01 (Tex. Crim. App. 2010). "The third party may, in his own right, give valid consent when he and the absent, non-consenting person share common authority over the premises

6

or the property." *Id.* (citing *United States v. Matlock*, 415 U.S. 164, 170 (1974)). Generally, when co-tenants or joint occupants live at a residence, either tenant may give law enforcement officers consent to search the premises as long as that tenant has control over and authority to use the premises. *See Jones v. State*, 119 S.W.3d 766, 787 (Tex. Crim. App. 2003); *see also Georgia v. Randolph*, 547 U.S. 103, 109, 122–23 (2006) (discussing common authority of co-tenants to consent to search and "rule that physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant"). Further, even if actual authority to consent does not exist, "consent may be validly obtained from an individual with apparent authority over the premises." *Limon v. State*, 340 S.W.3d 753, 756 (Tex. Crim. App. 2011) (citing *Illinois v. Rodriguez*, 497 U.S. 177, 188 (1990)). "Apparent authority is judged under an objective standard: 'would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises?'" *Id.* (quoting *Rodriguez*, 497 U.S. at 188 (internal citations omitted)). Determinations of actual and apparent authority are reviewed de novo as mixed questions of law and fact and "by examining the totality of the circumstances," *see Hubert*, 312 S.W.3d at 559–60, and the State must prove actual or apparent authority by a preponderance of the evidence, *Limon*, 340 S.W.3d at 757.

Here, the State presented evidence that: (i) Layton was a co-tenant of the apartment with appellant; (ii) Layton had access and knowledge of the brown box's contents; (iii) Layton and appellant shared the bedroom closet in which the brown box was located; (iv) appellant had left the premises and was not present when Layton verbally gave the officer permission to open the brown box; (v) at that time, the brown box was unlocked and Layton's car keys and cell phone were still

7

missing; (vi) Layton subsequently in writing consented to the search of the apartment; and (vii) no evidence was presented that appellant had exclusive possession of the brown box or that appellant expressly refused consent to search the apartment, the bedroom closet, or the brown box. *See Georgia*, 547 U.S. at 122–23 (discussing present co-tenant's express refusal to search); *Hubert*, 312 S.W.3d at 563–64 (observing that defendant may overcome presumption of third party's common authority to authorize search by presenting evidence that defendant had "exclusive possession" of searched premises). Examining the totality of the circumstances when the officers were conducting their search of the apartment, we conclude that the evidence supports Layton's common authority to consent to a search of the brown box and would "warrant a man of reasonable caution in the belief that [Layton] had authority" over the brown box. *See Limon*, 340 S.W.3d at 756; *Hubert*, 312 S.W.3d at 559–60.

To support his position that Layton did not have common or apparent authority over the brown box, appellant refers to the brown box as a "closed container" and compares it to the "closed shoebox" that was at issue in *United States v. Taylor*, 600 F.3d 678 (6th Cir. 2010). In that case, the Sixth Circuit concluded that the tenant of an apartment did not have apparent authority to consent to the search of the shoebox. *Id*. at 685. We, however, find the facts of that case distinguishable. In *Taylor*, there was an outstanding warrant for the defendant's arrest, officers initiated the contact with the defendant at the apartment, and the shoebox at issue was "partially covered by a piece of men's clothing" and located in the corner of a closet of a spare bedroom in the apartment. *Id*. at 679–80. The tenant of the apartment also testified that "she had never looked in the shoebox and did not have permission from [the defendant] to do so." *Id*. at 683. In contrast with

the defendant's "precautions to manifest his expectations of privacy" in *Taylor*, the brown box here was located in a closet shared by appellant and Layton, and Layton was aware of its content, initiated the police's involvement by calling 911, and asked them to help her locate her keys and cell phone in the apartment. *See id.* Further, at the time that Layton initially gave verbal permission to the officer to open the brown box and the officer opened the brown box, the officers believed that appellant was not present—that he had left the premises to go to the gym. *See id*. at 685 (concluding that searching officers failed to cure ambiguity over whether tenant had "mutual use or control of the shoebox" and noting that officers "could easily have gone downstairs and asked [tenant] 'to clarify her authority over' the shoebox, or asked [defendant] if the shoebox was his"); *see also Georgia*, 547 U.S. at 122–23. Further, even if we were to conclude that Layton's consent to search the apartment was limited to locating her keys and cell phone, the trial court reasonably could have found that it was within the scope of the search to look in the brown box for the keys and cell phone because they had not been located when the officer initially opened the brown box and either could have been located there. *See Valtierra v. State*, 310 S.W.3d 442, 448–49 (Tex. Crim. App. 2010) (requiring officer to act in accordance with purpose for which invited or allowed to enter).

Viewing the totality of the circumstances surrounding the search of the brown box in the light most favorable to the trial court's ruling, we conclude that the trial court did not err in concluding that the State met its burden to show that Layton had actual or apparent authority to consent to the search of the brown box. *See Limon*, 340 S.W.3d at 756; *Hubert*, 312 S.W.3d at 56 – 61. Accordingly, the trial court did not err in denying appellant's motion to suppress evidence obtained from the search of the brown box. We overrule appellant's sole issue.

9

## CONCLUSION

Having overruled appellant's issue, we affirm the judgment of conviction.

_____

Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   August 26, 2016

Do Not Publish

10